# United States Court of Appeals
## For the First Circuit

No. 06-1514

FIRST MEDICAL HEALTH PLAN, INC.,

Plaintiff, Appellee,

v.

NANCY VEGA-RAMOS, as Executive Director of the
"Administración de Servicios de Salud de Puerto Rico",

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Circuit Judge,

Stahl, Senior Circuit Judge,

and Howard Circuit Judge.

Lizzie M. Portela for appellant.
Richard W. Siehl with whom Baker & Hostetler LLP, Alberto G.
Estrella, Kenneth C. Suria and William Estrella Law Offices, PSC,
were on brief, for appellee.

February 22, 2007

**HOWARD**, <u>Circuit Judge</u>. This is an appeal from the entry of a preliminary injunction against Nancy Vega-Ramos, the executive director of the Administración de Servicios de Salud de Puerto Rico (ASES), the entity responsible for administering the Commonwealth of Puerto Rico's Medicaid program. The injunction requires ASES to permit health insurance provider First Medical Health Plan, Inc. (First Medical) to participate in Medicare Platino, an ASES-run program designed to extend full prescription drug coverage to Puerto Rico residents eligible for Medicare and Medicaid. Vega also appeals the denial of her motion to dismiss First Medical's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). We vacate the injunction and remand for dismissal of the complaint.

## I.

Enacted in 1965, Medicare is a federally run health insurance program benefitting primarily those who are 65 years of age and older. Before the recent extension of Medicare to cover a portion of prescription drug costs, Medicare covered only inpatient care through Part A and outpatient care through Part B. Parts A and B are fee-for-service insurance programs operated by the federal government. 42 U.S.C. § 1395c <u>et seq.</u> (Part A); 42 U.S.C. § 1395j <u>et seq.</u> (Part B). In 1997, Congress enacted Medicare Part C to allow Medicare beneficiaries to opt out of traditional fee-for-service coverage under Parts A and B. 42 U.S.C. § 1395w-21 <u>et</u>

seq. (Part C).  Under Part C, beneficiaries can, inter alia, enroll in "Medicare Advantage" plans, privately-run managed care plans that provide coverage for both inpatient and outpatient services.[1] Id. § 1395w-22(a)(1).

Medicare beneficiaries who are indigent are referred to as "dual eligible" beneficiaries, meaning that they also qualify for Medicaid assistance.  Id. § 1396u-5(c)(6)(A).  Each state administers a Medicaid program (with substantial federal funding) to provide medical coverage to its economically disadvantaged population.  See id. § 1396a et seq.  Dual eligible beneficiaries receive Medicaid coverage for health services not covered by Medicare and receive Medicaid funds to pay premiums and copayments that they incur for Medicare-covered services.  See Omnibus Budget Reconciliation Act of 1986, Pub L. No. 99-509, § 9403 (1986) (codified in scattered sections of 42 U.S.C.).

In 2003, Congress enacted the Medicare Modernization Act (MMA) to extend partial coverage for prescription drugs to Medicare beneficiaries under Medicare Part D.  See Pub. L. No. 173, Tit. I (2003) (Part D); see also 42 U.S.C. § 1395u-102(b) (establishing beneficiary responsibility for a portion of prescription drug costs under Part D).  Under the MMA, participation in Medicare Part D is voluntary for non-dual-eligible beneficiaries.  42 U.S.C. § 1395-

---

[1]These plans were first called "Medicare+Choice" plans but have been renamed "Medicare Advantage Plans."  See Pub. L. No. 108-173, § 201 (2003).

-3-

101(a). Medicare Advantage plans may offer Part D coverage to their enrollees. Id. § 1395-101(a)(1)(b)(i). Thus, Medicare Advantage plan enrollees may receive all of their Medicare coverage through a single managed care plan. If, however, a Medicare beneficiary is enrolled in a Medicare Advantage plan that does not offer Part D coverage, id. § 1395-101(a)(B)(iii), or the beneficiary is not enrolled in Part C at all, id. § 1395w-101(A), the beneficiary may join a "Prescription Drug Plan" to obtain Part D benefits.[2]

Unlike other Medicare beneficiaries, a dual eligible beneficiary must join a Part D plan (either a Medicare Advantage plan that offers Part D coverage or a Prescription Drug Plan). 42 U.S.C. § 1395w-101(b)(1)(C). If a dual eligible beneficiary fails to do so, the Secretary of Health and Human Services (Secretary) automatically enrolls the beneficiary in such a plan. Id. But, as mentioned above, because Part D provides only partial prescription drug coverage, dual eligible beneficiaries typically need additional assistance to pay their portion of prescription drug costs. The MMA addresses this problem differently depending on

---

[2]Prescription Drug Plans are plans offered by private insurance companies, approved by Medicare, which provide Part D coverage for those Medicare beneficiaries who do not receive Part D coverage through a Medicare Advantage plan. See id. § 1395-151(a)(14).

-4-

whether the dual eligible beneficiary lives in one of the fifty states or in one of the United States' territories.[3]

Prior to the MMA, Medicaid typically paid prescription drug coverage for dual eligible beneficiaries. The MMA ended this practice for dual eligible beneficiaries living in the states. Id. § 1396u-5(d)(1). The MMA prohibits state Medicaid programs -- but not territory Medicaid programs -- from paying for any portion of prescription drug costs normally shouldered by the beneficiary under Part D. Id.; 42 U.S.C. § 1396u-5(e) (excluding territories from the prohibition on Medicaid providing prescription drug assistance). Rather than allowing Medicaid to pay these costs, the MMA creates a subsidy program through which Medicare provides funds directly to indigent Part D beneficiaries to help them pay their share of drug costs. Id. § 1395w-114.

The MMA excludes the dual eligible population residing in the territories from receiving these Medicare subsidies. 42 U.S.C. § 1395w-114(a)(3)(F). Instead, the MMA authorizes each territory to seek approval from the Secretary to implement a plan to provide full prescription drug coverage for its dual eligible population. Id. § 1396u-5(e). If the Secretary approves the territory's plan, the federal government increases the territory's Medicaid allotment to help pay for this assistance. Id. § 1396u-5(e)(3).

_____

[3]For purposes of the MMA, the Commonwealth of Puerto Rico is included as a territory.

In accord with this provision, ASES submitted to the Secretary a plan entitled "Medicare Platino" to provide assistance for Puerto Rico's dual eligible population to pay its share of Part D covered drug costs.  As part of the plan, ASES stated that it would extend coverage to the dual eligible population by, inter alia, contracting with various Medicare Advantage plans that offered Part D coverage.

After receiving approval from the Secretary for Medicare Platino, ASES sought applications from qualified Medicare Advantage plans to participate.  In its request for applications, ASES stated that under Puerto Rico Law 72, it could not allow any Medicare Advantage plan to join Medicare Platino if the plan owned or operated health facilities that could provide covered services to a Medicare Platino covered beneficiary.  See 24 P.R. Laws Ann. § 7033(c).  That is, under Puerto Rico law, ASES could not permit a Medicare Advantage plan to join Medicare Platino if the plan could engage in self-dealing.

First Medical, a federally qualified Medicare Advantage plan operating in Puerto Rico, applied to participate in Medicare Platino.  ASES rejected First Medical's application under Law 72 because First Medical owned health care facilities that could provide covered services to Medicare Platino beneficiaries.  First Medical responded by filing suit in federal district court, arguing that Law 72 was preempted by federal law.  First Medical relied on

an MMA provision providing that "standards established by [Medicare] supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by a Medicare Advantage Organization under . . . Part" C of Medicare. 42 U.S.C. § 1395w-26(b)(3). The complaint alleged that Law 72 was preempted in these circumstances because it constitutes an impermissible standard governing First Medical's operation as a Medicare Advantage plan under Medicare Part C.

Vega moved to dismiss the complaint for failure to state a claim, and First Medical moved for a preliminary injunction to permit it to join Medicare Platino. The district court denied the motion to dismiss and entered the preliminary injunction. The court ruled that First Medical is a Medicare Advantage plan, and that the preemption provision contained in 42 U.S.C. § 1395w-26(b)(3) prevents ASES from enforcing Law 72 to bar First Medical from joining Medicare Platino. Vega appealed the entry of the preliminary injunction and the denial of the motion to dismiss.

## II.

### A.    Appellate Jurisdiction

Before addressing the merits of the district court's rulings, we confront First Medical's challenge to our jurisdiction to consider the denial of Vega's motion to dismiss. First Medical argues that the denial of a motion to dismiss is an interlocutory

-7-

ruling over which we have no jurisdiction unless the district court has certified the order for appeal under 28 U.S.C. § 1292(b), which it did not do.

First Medical is correct that, under the final judgment rule, we typically may not review the denial of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). See, e.g., Marie v. Allied Home Mort. Corp., 402 F.3d 1, 6 n.1 (1st Cir. 2005). But where, as here, we have before us an interlocutory appeal from the entry of a preliminary injunction, see 28 U.S.C. § 1292(a)(1), there is an exception to this general principle.

In Deckert v. Indep. Shares Corp., 311 U.S. 282, 287 (1940), the Supreme Court ruled that a court of appeals correctly considered the denial of a motion to dismiss for failure to state a claim in conjunction with an interlocutory appeal from an order granting a preliminary injunction. The Court explained that the "power [to hear interlocutory appeals from the entry of a preliminary injunction] is not limited to mere consideration of, and action upon, the order appealed from. If insuperable objection to maintaining the bill clearly appears, it may be dismissed and the litigation terminated." Id. This rule serves the salutary purpose of saving "both parties the needless expense of further prosecution of the suit" where the pleadings demonstrate that the suit is hopeless. N.C. R.R. Co. v. Story, 268 U.S. 288, 292 (1925). Appellate review of the denial of a motion to dismiss as

part of an interlocutory appeal from the grant of a preliminary injunction is permissible where the underlying facts are undisputed, the parties have had a fair opportunity to brief the legal issues, and the court of appeals can resolve the case as a matter of law. See, e.g., SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc., 211 F.3d 21, 24-25 (2d Cir. 2000); Planned Parenthood v. Camblos, 155 F.3d 352, 359-61 (4th Cir. 1998); Doe v. Sundquist, 106 F.3d 702, 707-08 (6th Cir. 1997); Magnolia Marine Transp. Co. v. Laplace Towing Corp., 964 F.2d 1571, 1580 (5th Cir. 1992).

Here, the parties agree that the material facts are not in dispute and that only legal questions are presented. Moreover, the parties had ample opportunity to brief these issues before the district court and, as will be seen, the issues can be resolved as a matter of law. Thus, we have jurisdiction over the denial of Vega's motion to dismiss.

### B.    The Merits

We review the grant of a preliminary injunction for an abuse of discretion. See Ross-Simon of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996) (stating the elements necessary for obtaining a preliminary injunction). But we review questions of law embedded within the preliminary injunction framework de novo, New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002), and will vacate the injunction

-9-

where there has been a legal error, see McClure v. Galvin, 386 F.3d 36, 41 (1st Cir. 2004). We review a ruling on a motion to dismiss for failure to state a claim de novo. See Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 5 (1st Cir. 2002). Here, because the grant of the injunction turned exclusively on legal rulings, we apply the same de novo standard for reviewing the denial of the motion to dismiss and the grant of the injunction. See McClure, 386 F.3d at 41.

The primary issue before us is whether 42 U.S.C. § 1395w-26(b)(3) expressly preempts application of Puerto Rico Law 72 in these circumstances. "Express preemption occurs when Congress has unmistakably . . . ordained that its enactments alone are to regulate a subject matter and state laws regulating that subject must fall." Mass. Ass'n of Health Maintenance Orgs. v. Ruthardt, 194 F.3d 176, 179 (1st Cir. 1999). Congress's intent "is the ultimate touchstone" of an express preemption analysis. Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996). In determining the preemptive scope of a congressional enactment, courts rely on the plain language of the statute and its legislative history to develop "a reasoned understanding of the way in which Congress intended the statute" to operate. N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 74 (1st Cir. 2006).

The federal preemption provision relied on by First Medical states that "the standards established" under federal law

-10-

for Medicare Advantage plans operating under Medicare Part C shall "supersede any State law or regulation (other than State licensing laws or State laws related to plan solvency)." 42 U.S.C. § 1395w-26(b)(3). The legislative history of this provision clarified that "the [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." H. Conf. Rep. 108-391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926; see also Uhm v. Humana, Inc., No. 06-0815, 2006 WL 1587443, at *2-3 (W.D. Wash. June 2, 2006) (holding that a state-law tort action based on alleged false advertising by Medicare Advantage plan operating under Medicare Part C was preempted by § 1395w-26(b)(3)).

As set forth above, First Medical persuaded the district court to find preemption on the ground that it is a Medicare Advantage plan seeking to participate in a Medicare program, namely, Medicare Platino. Vega challenges this ruling, arguing that Medicare Platino is not a Medicare program but rather is a Medicaid program and is outside the preemptive scope of § 1395w-26(b)(3). She contends that, while ASES invited Medicare Advantage plans to join Medicare Platino, Medicare Platino is the vehicle through which the Commonwealth's Medicaid system extends full prescription drug coverage to its dual eligible population. Under this view, Law 72 is not a prohibited Commonwealth "standard" for

the operation of a Medicare Advantage plan operating under Medicare Part C, but rather a permissible eligibility requirement for an entity wishing to participate in a Puerto Rico Medicaid program. We agree.

Congress has not precluded Medicaid programs operated by the territories from offering prescription drug coverage to its dual eligible population. 42 U.S.C. § 1396u-5(e). As we have explained, the prohibition adopted by Congress applies only to Medicaid programs operated by the <u>states</u>. <u>Id.</u> § 1396u-5(d)(1). With respect to the <u>territories</u>, Congress adopted an entirely different scheme which permits each territory to adopt a plan to provide assistance to its dual eligible beneficiaries to pay their share of Part D covered drug costs. <u>Id.</u> § 1396u-5(e)(2). As an incentive for each territory to enact such a plan, Congress promised that it would increase the territory's <u>Medicaid</u> funding if the plan was approved by the Secretary. <u>Id.</u> § 1396u-5(e)(3) (citing 42 U.S.C. § 1308(f) & (g)). Thus, Congress did <u>not</u> mandate that the <u>federal Medicare program</u> pay for full prescription drug coverage for the dual eligible population living in the territories. Nor did it bar the territories from using Medicaid funds to provide full prescription drug coverage to their dual eligible populations. <u>Id.</u> § 1396u-5(e)(1)(A) (excluding territories from the prohibition on using Medicaid funds to provide prescription drug coverage for dual eligible beneficiaries).

-12-

Additionally, the Secretary's rules for approving a territory's proposed plan for providing prescription drug coverage do not limit the methods through which a territory may provide drug coverage for its residents. The regulations provide only that a territory must submit a plan that describes the type of medical assistance to be provided, the number of eligible residents, and an assurance that no more than ten percent of the increased Medicaid funding will be used for administrative expenses. See 42 C.F.R. § 423.907. There is no requirement that a territory use an entity established by the Medicare laws to provide drug coverage for its dual eligible population.

As mentioned above, Congress's purpose in enacting § 1395w-26(b)(3) was to protect the purely federal nature of Medicare Advantage plans operating under Medicare. But here, ASES was not regulating the operation of a Medicare Advantage plan operating under Medicare Part C;[4] it was preventing an existing Medicare Advantage plan from participating in Puerto Rico's Medicaid program. By excluding First Medical from participating in Medicare Platino, ASES was not setting a standard for the operation of a Medicare Advantage plan operating under Medicare. Rather, it was acting to protect the integrity of the Puerto Rico Medicaid system in its role as the Commonwealth's Medicaid administrator. See Rio

---

[4]Indeed, it is undisputed that First Medical operates as a Medicare Advantage plan in Puerto Rico without having to satisfy Commonwealth standards unrelated to licensing or plan solvency.

-13-

Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 61 (1st Cir. 2005) ("Medicaid . . . is . . . directly administered by state governments"). Nothing in federal Medicare law prohibits this. Accordingly, we conclude that, in the circumstances presented, Puerto Rico Law 72 has not been preempted by 42 U.S.C. § 1395w-26(b)(3).

First Medical offers an alternative argument for affirmance. It argues that, even if Law 72 has not been preempted by § 1395w-26(b)(3), ASES did not have authority under federal Medicaid law to exclude it from participating in Medicare Platino. We disagree.

While Medicaid is a state-run program,[5] Puerto Rico accepts federal Medicaid funds and thus must comply with federal Medicaid laws. See Rio Grande Cmty. Heath Ctr., 397 F.3d at 61. Federal Medicaid law establishes that "in addition to any other authority, a State may exclude any individual or entity [from participating in its Medicaid program] for any for reason which the Secretary could exclude the individual or entity from participation in [Medicare]." 42 U.S.C. § 1396a(p).

First Medical interprets this statute to limit ASES's authority to exclude entities from participating in its Medicaid program to those reasons for which the Secretary could prohibit an

---

[5]Puerto Rico is treated is a state for purposes of Medicaid law. See 42 U.S.C. § 1301(a).

-14-

entity from participating in Medicare. According to First Medical, Law 72 establishes a basis for exclusion that does not exist under Medicare.

First Medical incorrectly interprets the Medicaid exclusion statute. The statute expressly grants states the authority to exclude entities from their Medicaid programs for reasons that the Secretary could use to exclude entities from participating in Medicare. But it also preserves the state's ability to exclude entities from participating in Medicaid under "any other authority." The legislative history clarifies that this "any other authority" language was intended to permit a state to exclude an entity from its Medicaid program for <u>any</u> reason established by state law. The Senate Report states:

> The Committee bill clarifies current Medicaid Law by expressly granting States the authority to exclude individuals or entities from participation in their Medicaid programs for any reason that constitutes a basis for an exclusion from Medicare . . . . <u>This provision is not intended to preclude a State from establishing, under State law, any other bases for excluding individuals or entities from its Medicaid program.</u>

S. Rep. 100-109 at 20, reprinted in 1987 U.S.C.C.A.N. at 700 (emphasis supplied). ASES was thus free, under federal Medicaid law, to enforce Law 72 to exclude First Medical from participating in Medicare Platino.

**III.**

For the reasons stated, Puerto Rico Law 72 has not been preempted by 42 U.S.C. §1395w-26(b)(3) and ASES was not precluded by federal Medicaid law from enforcing Law 72 to exclude First Medical from participating in Medicare Platino. We therefore **vacate** the preliminary injunction and **remand** with instructions that First Medical's complaint be dismissed. Costs are awarded to appellant.

**So ordered**.