**MEDICAL CARD SYSTEM, INC., et al., Plaintiffs,**

v.

**EQUIPO PRO CONVALECENCIA, et al., Defendants.**

**Civil No. 08–2007 (JAF).**

United States District Court, D. Puerto Rico.

Nov. 24, 2008.

Ramon L. Vinas–Bueso, Guelmarie Aguila–Melendez, Alvarado, Vinas & Fernandez PSC, San Juan, PR, for Plaintiffs.

Leila S. Castro–Moya, Rovira–Rodriguez Attorneys and Counsellors at Law, Hato Rey, PR, Rosa M. Cruz–Niemiec, Cruz Niemiec & Vazquez, San Juan, PR, for Defendants.

## OPINION AND ORDER

JOSÉ ANTONIO FUSTÉ, Chief Judge.

Plaintiffs, Medical Card System, Inc. ("MCS"), MCS Life Insurance Company ("MCS–Life"), and MCS Advantage, Inc. ("MCS Advantage"), bring this action against Defendant medical equipment suppliers [1] for breach of contract and violation of regulations contained in Medicare Part C, 42 U.S.C. §§ 1395w–21 to 1395w–29. *Docket No. 1.* Defendants jointly move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging lack of federal question jurisdiction. *Docket No. 11.* Plaintiffs oppose, *Docket No. 19*, Defendants supplement their motion, *Docket No. 25*, Plaintiffs oppose, *Docket No. 46*, and Defendants reply, *Docket No. 60.*

### I.

### Factual and Procedural Synopsis

Unless otherwise indicated, we derive the following factual summary from Plaintiffs' complaint, *Docket No. 1.* As we must, we assume all Plaintiffs' allegations are true and make all reasonable inferences in their favor. *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 36 (1st Cir.2001).

Medicare is a federally-run health insurance program providing coverage to people who are age sixty-five and older or who suffer from certain health conditions and meet other eligibility criteria. Medicare originally was a government-run plan consisting of Part A, which covered inpatient care, and Part B, which covered outpatient

---

**1.** Defendants are Equipo Pro Convalecencia, Inc., Nutrix, Inc., PK Industries Corp. d/b/a Medics, Premium Medical Supply and Equipment, Inc., ODY Corporation, Unity Medical Supply Corp., Medical Equipment & Supplies, Corp., Burgos Hospital Supply, Inc., Caribe Medical Supply, Geriatrics Medical Equipment, Inc., Solá Servicios Médicos, Inc., Professional Health Care and Hospital Supply, Inc., Multidisciplinary Patient Health Care, Inc., Hato Rey Medical Supply, Inc., Turabo Medical Equipment, Inc., Medco Medical Equipment, Inc., Advanced Rental & Sale Medical Equipment, Inc., Better Life, Inc., H.O.M.E.R., Inc., and Civ Biomedical Service Corp.

care. *First Med. Health Plan, Inc. v. Vega–Ramos,* 479 F.3d 46, 48 (1st Cir. 2007) (citing 42 U.S.C. § 1395c et seq. (Part A) and 42 U.S.C. § 1395j et seq. (Part B)). Medicare Part C, enacted in 1997, allows Medicare beneficiaries to enroll in privately-run Medicare Advantage ("MA") plans. *Id.* (citing 42 U.S.C. § 1395w–21 *et seq.* (Part C)). The Centers for Medicare and Medicare Services ("CMS") is the federal agency that administers Medicare and other social programs.

Plaintiff MCS is a privately-owned corporation that provides third-party administration of health care benefits. Plaintiffs MCS Advantage and MCS–Life are subsidiaries of MCS in Puerto Rico. MCS Advantage is a Medicare Advantage organization under Medicare Part C. Defendants are Puerto–Rico–based suppliers of durable medical equipment ("DME"), including oxygen tents, hospital beds, wheelchairs, and enteral and paraenteral nutrition.

On September 7, 2005, MCS–Life signed a contract ("the Contract") with CMS to furnish Medicare services to its beneficiaries as an MA organization under Medicare Part C. The Contract was assigned to MCS Advantage some time in 2007.

Between May 1999 and April 2007, MCS and MCS–Life signed contracts ("the Supplier Agreements") with the various Defendants for the provision of DME services to MCS beneficiaries. The Supplier Agreements require Defendants to comply with "all regulations related to [Medicare Part C], as established from time to time by [CMS]." The Supplier Agreements also provide that if a given Supplier Agreement terminates, at the end of a term or otherwise, the Defendant who is party to that agreement must continue providing DME at the contract price until MCS can make alternative arrangements with another supplier. The Supplier Agreements further require Defendants to cooperate in transferring beneficiaries to other suppliers following termination.

On June 7, 2008, MCS notified Defendants that it intended to terminate the Supplier Agreements as of September 7, 2008. Following this notice, Defendants indicated that they intended to discontinue supplying DME services to MCS beneficiaries as of September 8, 2008. Defendants have refused to cooperate with MCS in transferring Medicare beneficiaries to other suppliers.

On September 5, 2008, Plaintiffs filed the present action for declaratory and injunctive relief in federal district court. *Docket No. 1.* They argued that Defendants' actions violated both the Supplier Agreements and Medicare regulations requiring them to provide continued care to beneficiaries, and requested that we issue a declaratory judgment and temporary and permanent injunctions prohibiting Defendants from discontinuing provision of DME. *Id.* Plaintiffs further requested a temporary restraining order preventing Defendants from discontinuing services on September 8, 2008. *Id.* Plaintiffs argued that hundreds of medicare beneficiaries depend on DME services such as enteral nutrition and liquid oxygen, and that if Defendants cut off service, these beneficiaries would suffer immediate, life-threatening damages. *Id.* On September 5, 2008, we issued a ten-day temporary restraining order requiring Defendants to continue providing DME services. *Docket No. 3.*

On September 9, 2008, Defendants jointly moved to dismiss pursuant to Rule 12(b)(1), arguing that we lack jurisdiction because Plaintiffs only have contractual claims under the Supplier Agreements, which do not provide the basis for federal jurisdiction. *Docket No. 11.* On September 19, 2008, Plaintiffs opposed. *Docket No. 19.* Defendants supplemented their motion to dismiss on September 22, 2008,

*Docket No. 25,* and Plaintiffs opposed on September 27, 2008, *Docket No. 46.* Defendants replied on October 15, 2008. *Docket No. 60.*

## II.

### *Motion to Dismiss Standard Under Rule 12(b)(1)*

Under Rule 12(b)(1), a defendant may move to dismiss an action against him for lack of federal subject matter jurisdiction. *See* Fed.R.Civ.P. 12(b)(1). The party asserting jurisdiction has the burden of demonstrating its existence. *See Skwira v. United States,* 344 F.3d 64, 71 (1st Cir. 2003) (citing *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995)).

Rule 12(b)(1) is a "large umbrella, overspreading a variety of different types of challenges to subject-matter jurisdiction." *Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 362–63 (1st Cir.2001). A moving party may base a challenge to the sufficiency of the plaintiff's assertion of subject matter jurisdiction solely on the pleadings. *Id.* at 363. In that case, we take the plaintiff's "jurisdictionally-significant facts as true" and "assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Id.* at 363; *see Pejepscot Indus. Park, Inc. v. Maine Cent. R.R. Co.,* 215 F.3d 195, 197 (1st Cir.2000).

## III.

### *Analysis*

Defendants argue that we lack jurisdiction because Plaintiffs' claims are based exclusively on the Supplier Agreements and depend solely on Puerto Rico contract law. *Docket No. 11.* Plaintiffs counter that we have jurisdiction because Medicare Part C, 42 U.S.C. § 1395w–26(b)(3), expressly preempts state law remedies and 42 C.F.R. §§ 422.504(g) requires Defendants to provide continued benefits to plan beneficiaries. *Docket No. 19.*

■ We have original federal question jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A federal statute expressly preempts state law remedies, conferring federal question jurisdiction, where Congress has "unmistakably ... ordained" that its enactments alone regulate a given subject matter. *First Med. Health Plan, Inc. v. Vega–Ramos,* 479 F.3d 46, 51 (1st Cir.2007).

■ The preemption provision of Medicare Part C states that "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w–26(b)(3); 42 C.F.R. § 422.402. Thus, federal law controls to the extent that federal standards exist; state common law prevails where neither Congress nor CMS has established standards. *Uhm v. Humana, Inc.,* 540 F.3d 980, 985 (9th Cir.2008). For purposes of the preemption provision, a "standard" is "a statutory provision or a regulation promulgated under the [MMA] and published in the [Code of Federal Regulations]." *Id.* at 985 n. 9.

■ Plaintiffs contend that the federal government has provided standards to regulate the continuity of care of Medicare beneficiaries. *Docket No. 19.* 42 C.F.R. § 422.504(g) provides that:

(2) The MA organization must provide for the continuation of enrollee health care benefits—

(i) For all enrollees, for the duration of the contract period for which CMS payments have been made; and

(ii) For enrollees who are hospitalized on the date its contract with CMS terminates, or, in the event of an insolvency, through discharge.

(3) In meeting the requirements of this paragraph ... the MA organization may use—

(i) Contractual arrangements.

The CMS managed care manual further states that "[t]he MA organization must ensure continuity of services through arrangements that include, but are not limited to ... [d]eveloping and implementing procedures to ensure that the MA organization and its provider network have the information required for effective and continuous patient care and quality review." *Medicare Managed Care Manual*, # 100–16, at Chapter 4, § 120.3 (2007), *http://www.cms.hhs.gov/manuals/downloads/mc 86c04.pdf.*

Plaintiffs also rely on *Uhm v. Humana, Inc.*, 2006 WL 1587443 (W.D.Wash. June 2, 2006) (aff'd, 540 F.3d 980 (9th Cir.2008)) for the proposition that state laws are presumptively preempted under the Medicare Act. *Docket No. 19.* In *Uhm*, the plaintiffs, who were Medicare beneficiaries, unsuccessfully attempted to enroll in Humana's prescription drug benefit plan, and paid premiums for the prescription drug plan out of their social security checks. *Uhm*, 540 F.3d at 982. When they were ultimately forced to purchase their own prescription drugs out of pocket, the plaintiffs sued for breach of contract and other state law violations. *Id.* at 982–83. The Ninth Circuit ultimately affirmed the district court's holding that the claims were preempted because the Medicare Act provides specific mechanisms by which the plaintiffs should have asserted their claims. *Id.* at 988–91.

We find Plaintiffs' arguments unpersuasive. First, the regulations Plaintiffs cite as standards are standards intended to regulate the behavior of MA organizations, not of health care providers under contract with MA organizations. *See* 42 C.F.R. § 422.504(g); *Medicare Managed Care Manual*, # 100–16, at Chapter 4, § 120.3(2007), *http://www.cms.hhs.gov/manuals/downloads/mc86c04.pdf; see also* Stephen M. Elwell, Note, *Preemption of Contract Claims by the Medicare Act: An Analysis of the Recent Holding in Lifecare Hospitals v. Ochsner Health Plan*, 24 Rev. Litig. 125, 143 (Winter 2005) (arguing that the preemption provision of the Medicare Act should not be interpreted to cover contract disputes between HMOs and health care providers). The standards require Plaintiffs to maintain continuity of care, but say nothing about Defendants' duty to comply with private contractual obligations. Moreover, the Medicare Act does not provide a procedure for resolving disputes between MA organizations and health care providers. *See* Elwell, *supra,* at 144. Thus, this case is distinguishable from *Uhm*, in which the plaintiffs could and should have pursued their claims under specific procedures set forth in the Medicare Act. *See Uhm*, 540 F.3d at 988–91.[2]

Therefore, we find that Medicare Part C does not preempt contractual claims between MA organizations and health care

---

**2.** We note that we would lack federal question jurisdiction even if we determined that Plaintiffs' claims for relief arose under the Medicare Act. The Medicare Act "strips federal courts of primary federal-question subject matter jurisdiction" and instead requires plaintiffs to seek an administrative hearing before the Secretary of the Department of Health and Human Services. *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1047–48 (11th Cir.2008) (citing 42 U.S.C. §§ 405(h), 1395w–22(g)(5)). The Medicare Act then provides that the federal district court may review the Secretary's final decision. *Id.* (citing 42 U.S.C. § 405(g)). Because Plaintiffs' action is not against the Secretary of the Department of Health and Human Services for review of an administrative decision, we would lack subject matter jurisdiction even if Plaintiffs had valid claims under the Medicare Act. *See id.*

providers. Accordingly, we have no subject matter jurisdiction over Plaintiffs' claims.

In accordance with the foregoing, we hereby **GRANT** Defendants' motion to dismiss, *Docket No. 11,* and **DISMISS** Plaintiff's complaint **WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**