**MMM HEALTHCARE, INC., Plaintiff,**

v.

**MCS HEALTH MANAGEMENT OPTIONS; and MCS Advantage, Inc., Defendants.**

**Civil No. 10–1988 (DRD).**

United States District Court, D. Puerto Rico.

Oct. 6, 2011.

Lydia M. Ramos–Cruz, Osvaldo Carlo–Linares, Lausell & Carlo, PSC, San Juan, PR, for Plaintiff.

Mauricio O. Muniz–Luciano, Salvador J. Antonetti–Stutts, Hermann D. Bauer–Alvarez, O'Neill & Borges, San Juan, PR, Alaap B. Shah, Lee Calligaro, Epstein Becker & Green, PC, Washington, DC, for Defendants.

## SECOND AMENDED OPINION AND ORDER NUNC PRO TUNC

DANIEL R. DOMINGUEZ, District Judge.

### I. PROCEDURAL HISTORY

Plaintiff, MMM Healthcare Inc. (hereinafter "MMM") filed suit on October 12, 2010 against Defendants, MCS Health Management Options; MCS Advantage, Inc. seeking Temporary, Preliminary and Permanent Injunction. *See* Docket No. 1. The Plaintiff alleges that the defendants MCS Management Options; MCS Advantage, Inc. (hereinafter, jointly referred to as "MCS") unlawfully contacted MMM's patients, directly or indirectly, so as to misinform them regarding their health coverage, create confusion and/or induce them to join MCS Advantage plan. MMM claimed MCS violations of the Medicare Act, of the Medicaid Act, of the Health Insurance Portability and Accountability Act of 1996 ("HIPPA"), of the Puerto Rico Insurance Code, and of the Puerto Rico law prohibition against tortuous interference with contractual relationships.

On November 17, 2010 Defendants, MCS filed a Motion to Dismiss Complaint Pursuant to Federal Rule Civil Procedure 12(b)(1) and (6). *See* Docket 13. Defendant's hold that this Court should dismiss the Complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. Specifically they hold that all the three federal statutes that MMM filed suit failed to provide a private cause of action. Moreover, Defendants hold that the state-law tort claims are either preempted by federal law or fail to state a claim upon which relief can be granted.

On December 8, 2010, Plaintiff MMM filed an Amended Complaint for Permanent Injunction and Damages. *See* Docket No. 20. MMM dropped the three federal

claims and replaced them with a claim under § 43(a) of the Lanham Act (for false advertising and unfair competition), and retains its two Puerto Rico-law claims under supplemental jurisdiction. Subsequently, Defendants filed a Motion to Dismiss the amended complaint pursuant to Fed.R.Civ.P.12(b)(1) and (6) (January 5, 2011). *See* Docket No. 29. MCS alleges that the Lanham Act claim fails because the communications on which MMM based its complaint were not literally false and any contextual inaccuracies were inadvertent. Additionally, plaintiff alleges that MCS allegation of misrepresentation in marketing communications and state—law claims are preempted by CMS [1] and the Medicare Act.

On January 28, 2011, MMM Healthcare, Inc. filed an Opposition to motion to Dismiss. *See* Docket No. 37. MMM Healthcare alleges that it has satisfied both the "plausibility" standard under *Twombly* and *Iqbal* and the Lanham Act required elements. It further argues that the Medicare provisions do not prevent the Lanham Act because this particular contractual interference is not within the scope of the Medicare marketing regulations. Finally, MMM avers that it adequately pleaded all the required elements of a tortious interference claim under local law.

On February 18, 2011, MCS filed a Reply to the Opposition to Motion to Dismiss Amended Complaint. *See* Docket No. 44. The defendant holds that the case should be dismissed just as the Plaintiff has not satisfied the Lanham Act's "in commerce" requirement and does not adequately plead false statements or misrepresentations with in the proscription of the Act. Further defendants argue that the alleged "home visits" do not constitute "commer-

cial advertising or promotion" covered by the Lanham Act. Finally, defendants aver that the Puerto Rico law claims fail to allege the necessary elements, and are preempted by the detailed regulation of Medicare and Medicaid marketing by CMS.

Finally, on March 8, 2011, Plaintiff MMM filed a Surreply to Opposition to Motion to Dismiss, *see* Docket No. 50, alleging that the Lanham Act's "in commerce" requirement is met. MMM further alleges that: (a) MCS' false and misleading statements to MMM Platino Members in their homes are actionable under the Lanham Act; (b) the Puerto Rico state law claims are not preempted by the Medicare statutory provisions, which are well pleaded in the amended complaint.

## II. FACTS

Medicare is a federally administered insurance program that provides health insurance coverage to people who are age 65 or over, or who meet other special criteria. Medicaid is an insurance program that provides health insurance coverage for the indigent, and is partially funded by the federal government, but operated by the individual states (including the Commonwealth of Puerto Rico). In Puerto Rico, Medicaid benefits are offered through the "Mi Salud" program, as of October 1, 2010. MMM contracts with the federal and Puerto Rico governments to provide the Platino program to dual-eligible [2] individuals. MMM Platino plan provides benefits and pays claims outside of Puerto Rico. MMM also offers Medicare Advantage plans providing only Medicare benefits.

---

1. Centers for Medicare & Medicaid Services

2. Dual-eligible individuals are eligible to receive Medicare and Medicaid benefits. In

Puerto Rico these individuals enroll in a Medicare "Platino" program which combines the benefits into a single plan.

MCS–HMO was awarded a contract to serve as the exclusive insurance company offering the "Mi Salud" Medicaid program in six out of nine regions Puerto Rico was divided. MCS–HMO's "Mi Salud" contract **does not affect** or **include** dual-eligible individuals receiving Medicare and Medicaid benefits through a Platino program. In connection to MCS new contract, the Puerto Rico Health Insurance Administration (hereinafter "ASES"),[3] sent MCS–HMO a file with patients' contact information of patients of both Medicaid and **non** Medicaid enrollees. The non Medicaid patients were part of the MMM's Platino insurance program. ASES asked MCS–HMO to destroy the information that did not pertain to "Mi Salud" members. MCS–HMO failure to comply resulted in a fine of $100,000 by ASES.

MMM alleges in its amended complaint, Docket No. 20, the Defendants unlawfully used the information received by ASES to engage in an unfair, illegal, and tortious marketing scheme designed to promote their own plans over MMM's Platino product, and that MCS used MMM's information to illegally profit from its improper receipt of information.

On or about September 30, 2010, MCS–HMO sent a mailing to numerous individuals who were enrolled in MMM's Platino plan, and not in any of Defendants' plans including "Mi Salud". The letter informed these MMM Platino members that they would no longer be able to continue receiving care from their current healthcare provider and they should promptly enroll in MCS' health plans. The letter also encouraged the members to direct themselves to one of Defendants' customer service center for matters pertaining to the health providers.

MCS sent to an undisclosed members of MMM's Platino members a "Welcome Aboard A New Stage With MCS, Your Life Experience!" letter. The mailing welcomed the MMM members to their "new coverage" with MCS–HMO including an insurance card with the recipient's name on it. MMM finally alleges that Defendants have improperly contacted numerous individuals enrolled in MMM's Platino program at their homes, contrary to the requirements of the Medicare Advantage program. A representative of MCS contacted at least two MMM Platino members near their home, in an unsolicited visit, calling the patients by name. The representative identified herself as an MMM sales representative, when she actually was a MCS representative. These communications were false and misleading, as the documents the members deceitfully signed consisted of forms to enroll in the MCS Advantage's Medicare Advantage program. MMM alleges that MCS' conduct has been prejudicial to MMM and its members, as it had led to a substantial disenrollment trend from MMM.

## III. MOTION TO DISMISS

### The motion to dismiss standard under Fed.R.Civ.R. 12(b)(6).

Federal Rule of Civil Procedure 8(a) requires plaintiff to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") provides that a complaint will be dismissed for "failure to state a claim upon which relief can be granted." In *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) the court decided that for a pleading to be sufficient, a plaintiff is obligated "to provide the grounds of his entitlement to relief with more than labels and conclusions". The combined allega-

---

**3.** "Administracion De Seguros De Salud," ASES for its Spanish acronym.

tions, taken as true, must state a plausible case for relief. The plausibility standard requires more than a possibility that the defendant has acted unlawfully. Under *Twombly's* construction of Rule 8, the plaintiff's complaint has to "nudge" the claims "across the line from conceivable to plausible". *Twombly* caution against thinking of "plausibility as a standard of likely success on the merits"; the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor. *Sepúlveda–Villarini v. Department of Education of Puerto Rico,* 628 F.3d 25 (2010).

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) the court established that the plausibility standard applies outside its original antitrust context. Additionally, *Iqbal* provided a two-step process by which courts may analyze motions to dismiss under Fed. R. Civ. 12(b)(6). The court should first identify and set aside all legal conclusions or conclusory statements. Next, a court should decide whether what remains states a plausible claim for relief if accepted as true. The second step established in *Iqbal* is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ("Specific facts are not necessary; **the statements need only 'give the defendants fair notice of what the … claim is and the grounds upon which it rests'** ") (quoting *Twombly,* 127 S.Ct. at 1964) (emphasis ours).

Finally, a complaint will not survive a motion to dismiss resting on unsupported conclusions. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). "Specific information, even if not in the form of admissible evidence", would likely be sufficient at the motion to dismiss stage. *Sepúlveda–Villarini v. Dept. of Educ.,* 628 F.3d 25 (1st Cir.2010).

## IV. LEGAL ANALYSIS

### Preemption of the Medicare Act

 "Express preemption occurs when Congress has unmistakably … ordained that its enactments alone are to regulate a subject matter and state laws regulating that subject must fall." *Mass. Ass'n of Health Maintenance Orgs. v. Ruthardt,* 194 F.3d 176, 179 (1st Cir.1999). An express preemption analysis is guided by Congresses intent. *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). Courts must rely in the express language of the statute and the legislative history in order to develop a better understanding of Congresses intention. *N.H. Motor Transp. Ass'n v. Rowe,* 448 F.3d 66, 74 (1st Cir.2006).

██ The federal preemption provision relied on by MCS states that "the standards established" under federal law for Medicare Advantage plans operating under Medicare Part C shall "supersede any State law or regulation … other than State licensing laws or State laws related to plan solvency." 42 U.S.C. § 1395w–26(b)(3). MCS–HMO's "Mi Salud" contract is *not* a Medicare program but rather is a *Medicaid* program and is outside the preemptive scope of § 1395w–26(b)(3). The contract between MMM and CMS does not include dual-eligible individuals receiving Medicare and Medicare benefits through a Platino program. The contract only includes Medicaid patients.

The primary purpose of Medicaid is to enable states to provide medical services to those whose "income and resources are insufficient to meet the costs of necessary medical services…." 42 U.S.C. § 1396 (2000). Congress expressly intended that the provision of medical services be administered by the state "in a manner consistent with simplicity of administration and

the best interests of the recipients." *Id.*, § 1396a(19).

In the present case, MMM brought action under the Lanham Act and not under the Medicare statute. The Lanham Act expressly provides federal courts jurisdiction under § 39, 15 U.S.C. § 1121(a). The Defendants' Medicare statute standards are not applicable to the present case just as they don't regulate the behavior of two insurance companies (MMM with MCS–HMO and MCS Advantage). The Medicare Act provides a specific procedure for the disputes that arise from the contractual relationship between a patient (beneficiary) and a Medicare insurance company. The Medicare Act does not set forth a specific procedure by which the plaintiffs should have asserted their claims. Therefore, the Court finds that Medicare Act does not preempt the contractual claims in the present case. *Medical Card System v. Equipo Pro Convalecencia*, 587 F.Supp.2d 384 (2008).[4]

### Heightened Pleading standard under the Lanham Act

■ The MCS argues that MMM claims are not pleaded with the pleading standard under Federal Rule of Civil Procedure 9(b). The court finds this argument lacks merit.

Authorities have not applied this heightened pleading standard unanimously to Lanham Act claims. *See In Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F.Supp.2d 704, 709 (N.D.Ill.2006), wherein the court held that claims made under the Lanham Act alleging false advertising have to satisfy the heightened pleading standards of Fed.R.Civ.P. 9(b). Alternatively, the court held in *John P. Villano, Inc. v. CBS, Inc.*, 176 F.R.D. 130,

131 (S.D.N.Y.1997) that "a claim of false advertising under [the Lanham Act] falls outside the ambit of Rule 9(b) and may not be subject of any heightened pleading requirement".] In *Villano v. CBS, supra,* the court discussed several persuasive reasons why Lanham Act claims should not be subject to any pleading with particularity rule. Specifically it stated that a false advertising claim "is not identical to a claim of fraud" making the heightened standard inapplicable. *Axcan Scandipharm Inc. v. Ethex Corporation*, 585 F.Supp.2d 1067 (D.Minn.2007).

Notwithstanding, this court finds that MMM has met the pleading standard of Rule 9(b). The Rule is satisfied if the plaintiff's complaint sufficiently states with particularity the defendant acts and the circumstances that constitute fraud. The pleader should specifically state the **"who, what, where,** and **when"** of the allegedly false or fraudulent representation" *Alternative System Concepts, Inc. v. Synopsys, Inc.* 374 F.3d 23, 29 (1st Cir.2004).

In the instant case the Complaint states the facts that support the Lanham claims. MMM has adequately pleaded the "who [the Defendants], what [false advertising], where [mailings to individuals who are enrolled in MMM's Platino plan and contacted numerous individuals at their homes], when [on or about September 30, 2010], and how [falsely claiming that the beneficiaries that would no longer be able to receive care from their current healthcare provider and "Welcome Aboard !" letter with a new card attached]" of its claims. *Great Plains Trust Co. v. Union Pac. R. Co.*, 492 F.3d 986, 995 (8th Cir.2007).

---

4. Arguing that the preemption provision of the Medicare Act should not be interpreted to cover contract disputes between HMOs and health care providers. Stephen M. Elwell, Note, Preemption of Contract Claims by the Medicare Act: An Analysis of the Recent Holding in *Lifecare Hospital v. Ochsner Health Plan*, 24 Rev. Litig. 125, 143 (Winter 2005)

The pleading standard in a false advertising claim under § 1125 of the Lanham Act is not uniform through the circuits. Notwithstanding, this court finds that the case at bar has adequately met the heightened pleading standard.

### Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

The false advertising prong of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

. . . .

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. *Clorox Company Puerto Rico v. Gamble Commercial Company*, 228 F.3d 24, 33 (1st Cir.2000).

■ "To prove a false advertising claim under the Lanham Act, a plaintiff must demonstrate that (1) the defendant made **a false or misleading** description of fact or representation of fact in a **commercial advertisement** about his own or another's product; (2) the misrepresentation is **material,** in that it is likely to influence the purchasing decision; (3) the misrepresentation actually **deceives or has audience;** (4) the defendant placed the false or misleading statement in **interstate commerce;** and (5) the plaintiff **has been or is likely to be injured** as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Cashmere*

*& Camel Hair Manuf. Inst. v. Saks Fifth Avenue,* 284 F.3d 302, 310–11 (1st Cir. 2002), *see also Clorox,* 228 F.3d at 33 n. 6. A "crucial [statutory] limitation" of the Lanham Act, is that it only applies to "commercial advertising or promotion." *Podiatrist Association, Inc. v. La Cruz Azul De Puerto Rico, Inc.,* 332 F.3d 6, 19 (1st Cir.2003).

■ The burden of proof between injunctive relief claims and monetary damages claims are different under the Lanham Act. To warrant and injunctive relief the Plaintiff needs to show that the defendant's activities are likely to cause confusion or to deceive customers. In a damages claim a plaintiff is required a heightened level of proof that is, actual harm to its business. *Bracco Diagnostics, Inc. v. Amersham Health, Inc.,* 627 F.Supp.2d 384 (D.N.J.2009) *Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1335 (8th Cir.1997), *Cashmere & Camel Hair Manuf. Inst. v. Saks Fifth Avenue,* 284 F.3d at 311 *citing Quabaug Rubber Co. v. Fabiano Shoe Co., Inc.,* 567 F.2d 154, 160–161 (1st Cir.1977).

■ In the instant case, the Court must consider whether the complaint, as supplemented by the letters sent by MCS to MMM dual-eligible Platino program clients, alleges sufficient facts that state a plausibility that MCS's letters and "home visits" promoted disenrollment either explicitly or by necessary implication. The claim must be analyzed in its full context in order to determine if the claim can be literally false by necessary implication. *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134 (1997). This court must assume all well-pleaded facts as true at this Rule 12(b)(6) stage. *Thomas v. Rhode Island,* 542 F.3d 944, 948 (1st Cir.2008), citing *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir.2008). Dismissal would only be proper if it does not "state a claim upon

which relief can be granted." This Court finds that the letters and "home visits", viewed in the light most favorable to MMM, plausibly mislead MMM beneficiaries to switch to MCS program.

### False or misleading description of fact or representation of fact in a commercial advertisement.

Whether an advertisement is literally false is typically an issue of fact. *See Mead Johnson & Co. v. Abbott Labs.,* 209 F.3d 1032, 1034 (7th Cir.2000). The court must first determine the claim conveyed by the advertisement, then evaluate whether that claim is false. *See Castrol,* 987 F.2d at 944. A plaintiff can succeed on a false advertising claim by proving either that the defendant's advertisement is literally false or implicitly false. When an advertisement is literally false on its face a violation may be established without evidence of consumer deception. *Balance Dynamics Corp. v. Schmitt Indus.,* 204 F.3d 683, 693 (6th Cir.2000). The advertisement is implicitly false if it is true or ambiguous but likely to mislead and confuse consumers. "[A]n additional burden is placed upon the plaintiff to show that the advertisement ... conveys a misleading message to the viewing public." *Clorox Company Puerto Rico v. Gamble Commercial Company,* 228 F.3d 24, 33 (1st Cir.2000). Lastly, a plaintiff can succeed on a false advertising claim when the advertisement conveys falsity by necessary implication. "A claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated". *Clorox, supra* at 35.

In reviewing the dismissal request in the instant case, however, the Court is not required to determine what claim was actually conveyed by the advertisements. The Court must evaluate whether the com-

plaint, as supplemented by the letters, alleges facts that would allow a rational fact finder to conclude that MCS advertisements induced MMM clients disenrollment and enroll in MCS Advantage either explicitly or by necessary implication. All reasonable inferences as to the claim made must be in favor of MMM. *Clorox, supra,* citing *Southland Sod Farms,* 108 F.3d at 1139; *see also Johnson & Johnson–Merck Consumer Pharmaceuticals Co. v Rhone–Poulenc Rorer,* 19 F.3d 125, 129 (3d Cir. 1994); *U.S. Healthcare, Inc. v. Blue Cross,* 898 F.2d 914, 922 (3d Cir.1990). This court must credit the allegations made be MMM in this 12(b)(6) dismissal. These intricacies of the letters go beyond this court concern at this stage. This court finds that MMM has met the first prong of the Lanham Act.

### Materiality

The materiality component of a false advertising claim requires a plaintiff to prove that the defendant's deception is "likely to influence the purchasing decision". *Clorox,* 228 F.3d at 33 n. 6. One method of establishing materiality involves showing that the false or misleading statement relates to an "inherent quality or characteristic" of the product. *Nat'l Basketball Ass'n v. Motorola, Inc.,* 105 F.3d 841, 855 (2d Cir.1997). The materiality focuses on whether the false or misleading statements is likely to make a difference to purchasers. When a statement is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on consumers. *Cashmere,* 284 F.3d 302 n. 10 (internal citations omitted).

It is reasonable to conclude that defendants' misrepresentation through the September 30, 2010 letter, "Welcome Aboard" letter and "home visits" is **material** because it relates to a characteristic

that defines the insurance product at issue, as well as the market in which it is sold. The plaintiffs are not required to present allegations that defendants' misrepresentation actually influenced consumers' purchasing decisions. At this stage the only requisite necessary as to the pleadings is that it was **likely** to influence them pursuant to the plausibility standard. *Clorox*, 228 F.3d at 33 n. 6.

### Consumer deception

 This element requires plaintiffs to demonstrate that the alleged misrepresentation deceived a substantial portion of the consuming public. *Clorox*, 228 F.3d at 33 n. 6. Consumer deception maybe demonstrated through surveys, which established that consumers were misled by the alleged misrepresentations. *Cashmere*, 284 F.3d at 314. Plaintiff's that present literally false claims are liberated from the burden of presenting evidence because they benefit of a presumption of consumer deception. *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir.1993).

An additional burden is placed when a plaintiff alleges a misleading advertising. *Cashmere*, 284 F.3d at 314. The Court in *Balance Dynamics*, 204 F.3d at 693, stated "because proof of ' actual confusion' may be difficult to obtain, most of the circuits have ruled that when a statement is literally false, a plaintiff need not demonstrate actual consumer deception in order to obtain relief under the Lanham Act".

 Now, an implied falsity claim which is, a representation that is literally true but in context becomes likely to mislead. *Clorox*, 228 F.3d at 33. The court finds that in the present case the letters were literally true but is misleading in context.

However, the Court disagrees with defendants' assertion that all claims that rely on implied messages are necessarily implied falsity claims. In *Clorox*, this Court noted that "[a]lthough fact finders usually base literal falsity claims upon the explicit claims made by an advertisement, they may also consider any claims the advertisement conveys by 'necessary implication'." *Id.* at 34–35. The Court explained that "[a] claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had explicitly stated." *Id.* at 35. *Cashmere*, 284 F.3d at 315.

 Plaintiff may benefit from a presumption of consumer deception if it was a literally false claim. Alternatively, the plaintiff can benefit from a presumption of consumer deception if there is proof that a defendant intended to deceive or mislead consumers. A presumption would arise that customers were deceived. *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329 1333 (8th Cir.1997), *Cashmere*, 284 F.3d at 316. This holds true for both, an implied falsity claim or a literally false claim.

### Interstate Commerce

 "[A] "crucial [statutory] limitation" of Lanham Act, is that it only applies to 'commercial advertising or promotion' " pursuant to 15 U.S.C. § 1125(a)(1)(B). *Podiatrist Association, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir.2003). To constitute commercial advertising or promotion, the "representation must (a) constitute commercial speech (b) made with the intent of influencing potential customers to purchase the speaker's goods or services (c) by a speaker who is a competitor of the plaintiff in some line of trade or commerce and (d) disseminated to the consuming public in such a way as to constitute 'advertising' or 'promotion.' " To pass the pleading threshold in a Lanham Act § 43(a)(1)(B) case, a plaintiff at the very least must identify some medium or means through which the defendant disseminated information to a particular

class of consumers. See *Landrau v. Solis–Betancourt*, 554 F.Supp.2d 117 (2008), citing *Encompass Insurance Co. of Mass. v. Giampa*, 522 F.Supp.2d 300, 311 (D.Mass.2007).

[29] The "core notion" of commercial speech is "speech which does no more than propose a commercial transaction." *Landrau v. Solis–Betancourt, Id.* (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (internal quotations omitted)). In the instant case the plaintiffs pass the pleading threshold of a Lanham Act § 43(a) case. MMM has pleaded and provided the letters that were sent to MMM clients which contained the alleged misleading information regarding the clients coverage. The letter were the means through which the defendants disseminated the information to the Platino Program beneficiaries. *Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc.*, 332 F.3d at 19–20, citing *Ultra–Temp Corp. v. Advanced Vacuum Sys., Inc.*, 27 F.Supp.2d 86, 91 (D.Mass.1998).

In the instant case MMM alleges that MCS sent two letters and contacted MMM Platino program at their homes. The vehicles used by MCS were written and oral communications targeting non "Mis Salud" clients. These letters contained information about MCS product and specified what actions that MMM enrollees should take in order to join the MCS insurance plan. In the "home visits" MCS misrepresented itself as MMM and inducing clients to switching plans without informing them that they are doing so. MMM and MCS are competitors because both offer insurance programs.

This court finds that Plaintiffs have satisfied the forth prong of the Lanham Act

"interstate commerce" requirement. MMM is an entity inherently in interstate commerce in nature just as Medicaid is partially federally funded entity. MMM contracts with the federal government and the Puerto Rico government through its Medicare Advantage plans which are under jurisdiction of CMS offices in New York, New York. MMM also alleges that they regularly pays claims outside of Puerto Rico. Finally, this case arises over MCS allegedly targeting MMM's Platino Program clients which is a program offered in interstate commerce.[5]

### Causation and Damages

██ In order to prove causation under § 1125(a) of the Lanham Act, the aggrieved party must demonstrate that the false advertisement actually harmed its business. "A precise showing is not required, and a diversion of sales, for example, would suffice." *Cashmere*, at 318 citing *Quabaug*, 567 F.2d at 161(internal citations omitted).

MMM has adequately pleaded that it has suffered significant financial and reputation damages as a result of Defendants acts. Further, the Court holds that it is reasonable to conclude that false information provided to clients, as alleged in the amended complaint, could potentially entail the clients to disenroll from the MMM program, which will be followed also as alleged in the amended complaint, by financial repercussions of loss and revenues. The facts alleged in the amended complaint sufficiently satisfy the plausibility standard of the Rule 12(b)(6).

### State Law Claims

██ This court finds that the Plaintiffs satisfied the state law claims, as the Lanham Act claim and the state law claims have overlapping requirements.[6]

---

5. The Platino Product is for dual-eligible members. These are the individual that are

eligible for both the Medicare and Medicaid benefits.

6. The Court finds that the Lanham Act allega-

## V. CONCLUSION

For the reasons stated above, the court hereby **DENIES** Defendants' *Motion to Dismiss*, Docket No. 29, is denied.

The defendant is granted twenty (20) days from this *Order* to answer the complaint.

IT IS SO ORDERED.

tions discussed *infra* in general satisfy the *Twombly* and *Iqbal* pleadings' requirements, which are: "(1) a contract with which a third party has interfered; (2) that the third party acted intentionally, knowing of the existence of the contract: (3) damages; and (4) that the damages are a result of the acts of the third party. *General Office Products Corp. v. A.M. Capen's Sons, Inc.*, 115 D.P.R. 553 (1984)." *See* Plaintiff's Opposition to Motion to Dismiss, Docket No. 37, p.p. 18–19. A contract with a third party, the Puerto Rico Health Insurance Administration ("ASES"), has been alleged in the amended complaint, Docket No. 20, ¶ 1. A third party has interfered intentionally and knowingly by sending letters, and making home visits to MMM's clients, attempting to interfere with enrolled customers of MMM Platino Program. *See* Docket No. 20, ¶¶ 27–30, 37–38, 50. Damages ensued as a consequence of this interference. *See* Docket No. 20, ¶¶ 50–52.