EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| MCS Advantage, Inc.<br><br>Recurrido<br><br>v.<br><br>José L. Fossas Blanco y otros<br><br>Peticionarios | Certiorari<br><br>2023 TSPR 8<br><br>211 DPR ___ |

Número del Caso: CC-2021-806

Fecha: 25 de enero de 2023

Tribunal de Apelaciones:

Panel Especial

Abogado de la parte peticionaria:

Lcdo. Luis A. Pabón Rojas

Abogados de la parte recurrida:

Lcdo. Gerardo J. Hernández

Materia: Derecho Administrativo- Jurisdicción primaria exclusiva de la Oficina del Comisionado de Seguros para atender una controversia relacionada con el rembolso de determinadas reclamaciones pagadas en exceso.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

MCS Advantage, Inc.

    Recurrido

        v.              CC-2021-0806     *Certiorari*

José L. Fossas Blanco y
otros

    Peticionarios

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 25 de enero de 2023.

El presente caso nos brinda la oportunidad de aclarar si es la Oficina del Comisionado de Seguros el foro con jurisdicción primaria exclusiva para entender en cierta controversia entre una aseguradora y un proveedor de servicios de salud respecto al reembolso de determinadas reclamaciones pagadas en exceso. No se trata pues, de pasar juicio sobre los méritos de la reclamación en sí, sino de precisar si el referido foro debe atender, en primera instancia, la misma.

Adelantamos que, luego de un ponderado y cuidadoso análisis del expediente ante nuestra consideración, así como de las disposiciones legales y

jurisprudenciales aplicables, hemos llegado a la conclusión que es la Oficina del Comisionado de Seguros el ente con jurisdicción primaria exclusiva para dirimir controversias como la de epígrafe. Veamos.

I.

Allá para el 10 de septiembre de 2018, MCS Advantage, Inc. (en adelante, "MCS Advantage") presentó una demanda en cobro de dinero en contra del Dr. José L. Fossas Blanco (en adelante, "doctor Fossas Blanco"), la Sra. María Ricardo López y la sociedad legal de bienes gananciales compuesta por ambos. A grandes rasgos, adujo que el doctor Fossas Blanco facturó como especialista en oftalmología por determinados servicios de salud sin estar autorizado para ello, debido a que fue contratado, únicamente, como médico cirujano generalista. En particular, indicó que el galeno cobró indebidamente la suma de $77,957.76, por lo que reclamó esa cantidad, más los intereses, gastos, costas y honorarios de abogado.

Vista la comparecencia de MCS Advantage, el doctor Fossas Blanco presentó su contestación a la demanda. En su escrito, sostuvo que poseía todas las credenciales requeridas para llevar a cabo los procedimientos y servicios médicos por los cuales había facturado. Así pues, arguyó que no adeudaba suma de dinero alguna por concepto de reclamaciones pagadas en exceso, según alegado por MCS Advantage.

Así las cosas, superados varios trámites procesales no necesarios aquí pormenorizar, el doctor Fossas Blanco

presentó ante el Tribunal de Primera Instancia una *Moción para solicitar desestimación por falta de jurisdicción sobre la materia.* En ésta, alegó que el foro primario carecía de jurisdicción para entender en el caso de autos. Lo anterior, al señalar que la Asamblea Legislativa delegó, expresamente, a la Oficina del Comisionado de Seguros la jurisdicción original para dirimir, en primera instancia, las controversias que surgieran entre las aseguradoras y los proveedores de servicios de salud al amparo del Código de Seguros de Puerto Rico, *infra*, y la *Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud*, *infra*.

En concreto, el referido galeno apuntó a que fue la propia aseguradora -- entiéndase, MCS Advantage -- quien reconoció la jurisdicción de la Oficina del Comisionado de Seguros para entender en el asunto. Ello, al solicitarle el reembolso de las reclamaciones presuntamente pagadas en exceso al amparo de lo dispuesto en la *Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud*, *infra*, y la Regla 73 (Normas para Regular el Pago Puntual de Reclamaciones a los Proveedores de Servicios de Salud) del Reglamento del Código de Seguros de Puerto Rico Núm. 6559.[1]

---

[1] En específico, surge que el 25 de febrero de 2016 MCS Advantage le cursó una carta al doctor Fossas Blanco mediante la cual expuso que:

> **[la] autoridad para recobrar de los proveedores surge de la Ley de [P]ago [P]untual, Ley Núm. 104 del 19 de julio de 2002, según enmendada, (26 LPRA sec. 3001 y subsiguientes) y la Regla 73 creada al amparo de los deberes impuestos por la Ley de Pago Puntual a la Oficina del Comisionado de Seguros de Puerto Rico. Específicamente del artículo 30.040 de [la] Ley de Pago Puntual, 26 LPRA sec. 3003 y del artículo 5 de la Regla 73 (Reembolso e impugnación de reembolsos).** Estas disposiciones indican que la aseguradora tiene hasta seis (6)

Enterada de lo anterior, MCS Advantage compareció ante el Tribunal de Primera Instancia mediante *Oposición a moción solicitando desestimación por falta de jurisdicción sobre la materia*. En suma, esgrimió que era el foro primario, y no la

---

años, contados a partir del momento en que se efectúe el pago, para solicitar el reembolso.

Además, el contrato del Dr. Fossas Blanco con MCS [Advantage], otorgado entre ambas partes el 5 de mayo de 2009, en el Artículo V, sección 5.2, indica que del proveedor no notificar pagos realizados en exceso, MCS p[odrá] recuperar cualquier cantidad en un periodo de seis (6) años a partir de la fecha del pago realizado. (Énfasis suplido). Véase, Apéndice del *certiorari*, pág. 125.

Sobre esto último, precisa señalar que los contratos otorgados entre MCS Advantage y el doctor Fossas Blanco objeto de la presente controversia, establecen lo relativo al recobro de reclamaciones presuntamente no procesables.

A modo de ejemplo, el contrato otorgado entre las partes en el 2006, en lo aquí pertinente, dispone lo siguiente:

4.4 **Collection for Underpayments and Overcharges**. If for any reason; (1) MCS pays to the Provider any sum in excess of the corresponding amount for the services rendered; or (2) if MCS pays to the Provider any sum for which the Provider is not entitled to; MCS recover from the Provider the amount erroneously paid within a period of six (6) years beginning on the date the payment was made. […] Provider will have the right to claim to MCS the amount in underpayment as established in the Law Number 104 of July 19, 2002, commonly known as "Prompt Payment Law".

11.6 **Governing Law**. This Agreement shall be governed in all respects by the laws of Puerto Rico. (Énfasis en el original) Véase, Apéndice del *certiorari*, págs. 147 y 154.

Asimismo, en el contrato otorgado en el año 2009 -- titulado *Preferred Provider Organization (PPO and MCS Classicare Non-Platino-Agreement)* -- MCS Advantage y el doctor Fossas Blanco acordaron lo siguiente:

**Article V**
**Payments in excess or made in error**

[…]

**5.2** […] Should Provider fail to notify MCS and appropriates the payments in question, MCS may recover from Provider any amount within a period of six (6) years beginning on the date payment was made. Provider authorizes MCS to offset payment against any amount MCS owes to Provider.

[…]

**10.13** This Agreement shall be governed in all respects by the laws of the Commonwealth of Puerto Rico. (Énfasis en el original). Véase, Apéndice del *certiorari*, págs. 164-172.

Oficina del Comisionado de Seguros, el foro con jurisdicción para adjudicar la controversia. Esto, pues, a su juicio, se trataba de determinada acción de reembolso sobre reclamaciones no procesables pagadas a un proveedor bajo un plan Medicare Advantage; es decir, al amparo de un programa de salud sujeto a las leyes y reglamentaciones federales y no a lo dispuesto en el Código de Seguros de Puerto Rico, *infra*. A esos efectos, MCS Advantage insistió en que el caso debía ventilarse ante el Tribunal de Primera Instancia.

Evaluados los escritos de ambas partes, el foro primario emitió una *Orden* mediante la cual denegó la solicitud de desestimación por falta de jurisdicción sobre la materia presentada por el doctor Fossas Blanco. La referida *Orden* fue debidamente notificada a todas las partes con interés en el litigio.

En desacuerdo con lo anterior, el doctor Fossas Blanco presentó una solicitud de reconsideración en la que reiteró, entre otras cosas, que dicho foro -- entiéndase, el Tribunal de Primera Instancia -- carecía de jurisdicción para entender en los asuntos ante su consideración. En ese sentido, repitió que el Código de Seguros de Puerto Rico, *infra*, facultó a la Oficina del Comisionado de Seguros para atender controversias como la de autos. La referida solicitud de reconsideración fue denegada.

Inconforme con el proceder del foro primario, el doctor Fossas Blanco acudió al Tribunal de Apelaciones mediante recurso de *certiorari*. En esencia, adujo que el Tribunal de

Primera Instancia había errado al declararse con jurisdicción para entender en el presente litigio. Al respecto, señaló que la determinación recurrida era contraria al claro mandato legislativo que concede a la Oficina del Comisionado de Seguros la jurisdicción original para intervenir en una controversia entre una aseguradora y un proveedor de servicios de salud.

Oportunamente, MCS Advantage se opuso a la solicitud de *certiorari* presentada por el doctor Fossas Blanco y reprodujo iguales argumentos a los esbozados ante el foro primario. Particularmente, destacó que el Tribunal de Primera Instancia había actuado correctamente al asumir jurisdicción en el caso de autos toda vez que se trataba de una acción en cobro de dinero al amparo de ciertos estatutos federales, por lo que la Oficina del Comisionado de Seguros carecía de jurisdicción para atender los asuntos aquí en controversia.

Tras analizar los alegatos de ambas partes, el Tribunal de Apelaciones notificó una *Sentencia* mediante la cual confirmó la determinación del foro primario. A juicio del foro apelativo intermedio, no existía impedimento legal para que el Tribunal de Primera Instancia -- tal como lo hizo -- asumiera jurisdicción para dirimir una controversia sobre cobro de dinero en el contexto de un contrato de servicios de salud.

En desacuerdo con la determinación del Tribunal de Apelaciones, el doctor Fossas Blanco comparece ante nos mediante petición de *certiorari*. En síntesis, señala que el

foro apelativo intermedio erró, al confirmar la determinación del foro primario, y al concluir que la controversia de autos tenía que dilucidarse ante el Tribunal de Primera Instancia y no ante la Oficina del Comisionado de Seguros. En específico, insiste en que, contrario a lo intimado por los foros *a quo*, la Oficina del Comisionado de Seguros es el foro con jurisdicción primaria exclusiva para resolver las controversias que surjan de la relación contractual entre una aseguradora y un proveedor de servicios de salud.

En el tiempo que tenía para ello, MCS Advantage comparece ante nos en oposición. En su escrito, esbozó argumentos similares a los expuestos anteriormente ante el foro primario y el foro apelativo intermedio.

Trabada así la controversia, expedimos el recurso de *certiorari* al que hemos hecho referencia y, con el beneficio de la comparecencia de ambas partes con interés en el litigio, procedemos a exponer la normativa aplicable al mismo.

II.

A.

Como es sabido, la jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante para las partes. *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 385-386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). En Puerto Rico, los tribunales son foros de jurisdicción general por lo que, de ordinario, pueden atender

todo tipo de controversia que sea traída ante su consideración, excepto que carezcan de jurisdicción sobre la materia. *Adm. Terrenos v. Ponce Bayland, supra; Beltrán Cintrón et al. v. ELA et al., supra; Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014).

La jurisdicción sobre la materia ha sido definida como "la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *Beltrán Cintrón et al. v. ELA et al., supra*, citando a *Rodríguez Rivera v. De León Otaño, supra*. Sobre el particular, hemos sentenciado que el Estado, a través de sus leyes, es quien único puede otorgar o privar a un tribunal de jurisdicción sobre la materia. *Beltrán Cintrón et al. v. ELA et al., supra; Rodríguez Rivera v. De León Otaño, supra; Unisys v. Ramallo Brothers*, 128 DPR 842, 862 esc. 5 (1991). Así pues, para privar a un tribunal de jurisdicción, es necesario que algún estatuto lo disponga expresamente o que surja de él por implicación necesaria. *Báez Rodríguez et al. v. E.L.A.*, 179 DPR 231, 241 (2010); *Mun. Arecibo v. Mun. Quebradillas*, 161 DPR 109, 114 (2004); *J. Directores v. Ramos*, 157 DPR 818, 824 (2002).

Presentes las antedichas circunstancias, la falta de jurisdicción sobre la materia acarrea las siguientes consecuencias:

> (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso,

y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Beltrán Cintrón et al. v. ELA et al.*, *supra*, págs. 101-102. Véase, además, *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 372-373 (2018); J. A. Echevarría Vargas, *Procedimiento Civil Puertorriqueño*, 1era ed., Colombia, 2010, pág. 25.

En consecuencia, si un tribunal determina que carece de jurisdicción sobre la materia para atender determinado asunto, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. *Allied Mgmt. Group v. Oriental Bank*, *supra*, pág. 386; *Ruiz Camilo v. Trafon Group, Inc.*, 200 DPR 254, 268-269 (2018); *Pérez Soto v. Cantera Pérez, Inc. et al.*, 188 DPR 98, 105 (2013). Ello, pues, es harto reiterado que la falta de jurisdicción es insubsanable. *Allied Mgmt. Group v. Oriental Bank*, *supra*; *JMG Investment v. ELA et al.*, 203 DPR 708, 714 (2019); *Bco. Santander v. Correa García,* 196 DPR 452, 470 (2016).

### B.

Aclarado lo anterior, y en lo relacionado a otro aspecto de índole jurisdiccional, conviene también recordar aquí que la doctrina de jurisdicción primaria es una norma de autolimitación judicial que se emplea para -- en determinados escenarios -- poder definir cuál foro, si el administrativo o el judicial, ostenta jurisdicción original para entender en determinado asunto. *Beltrán Cintrón et al. v. ELA et al.*, *supra*; *Rodríguez Rivera v. De León Otaño*, *supra*; *Báez Rodríguez et al. v. E.L.A.*, *supra*. Véase, además, D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3era ed., Ed. FORUM, 2013, pág. 562.

Es decir, es una doctrina de origen jurisprudencial que delimita los contornos relacionados con aquellas instancias en las cuales un tribunal debe abstenerse de ejercer su jurisdicción hasta tanto la agencia administrativa resuelva la controversia ante su consideración. *Íd.*

En nuestro ordenamiento jurídico se reconocen dos (2) vertientes de la doctrina de jurisdicción primaria, a saber: la *jurisdicción primaria concurrente* y la *jurisdicción primaria exclusiva*. *Beltrán Cintrón et al. v. ELA et al.*, *supra*; *Rodríguez Rivera v. De León Otaño*, *supra*; *Báez Rodríguez et al. v. E.L.A.*, *supra*. La primera vertiente, entiéndase la **jurisdicción primaria concurrente**, presupone que tanto el foro administrativo como el judicial poseen jurisdicción para entender en determinada controversia. *Íd.* No empece a ello, la experiencia nos dicta que, en la mayoría de las ocasiones, los tribunales se abstienen de considerar la misma y ceden la primacía a la agencia por su pericia y conocimiento especializado sobre el asunto objeto de la reclamación. *Íd.* Véase, también, Fernández Quiñones, *op. cit.*, págs. 562-563.

Por otro lado, y en lo aquí pertinente, la segunda vertiente del tema bajo estudio, entiéndase la **jurisdicción primaria exclusiva o jurisdicción estatutaria**, se suscita en aquellos escenarios en que una ley expresamente le confiere jurisdicción a una agencia administrativa para dilucidar determinada controversia en primera instancia. *Íd.* Véase, además, J. A. Echevarría Vargas, *Derecho Administrativo*

*Puertorriqueño*, 4ta ed., Ed. SITUM, 2017, pág. 77; Fernández Quiñones, *op. cit.*, pág. 574. En otras palabras, se trata de "una jurisdicción sobre la materia que el legislador ha depositado en el ámbito jurisdiccional de la agencia de forma exclusiva", *Rodríguez Rivera v. De León Otaño*, *supra*, pág. 709; por lo que, los tribunales están impedidos de intervenir, en primera instancia, en esos asuntos o materias sobre las cuales la Asamblea Legislativa le ha conferido jurisdicción exclusiva al ente administrativo. *Beltrán Cintrón et al. v. ELA et al.*, *supra*; *Rodríguez Rivera v. De León Otaño*, *supra*; *Báez Rodríguez et al. v. E.L.A.*, *supra*. Asimismo, se ha resuelto que, para determinar si un estatuto le confiere o no jurisdicción exclusiva a un organismo administrativo, "es necesario evaluar si esto ha sido dispuesto expresamente en la ley o si surge de esta por implicación necesaria". *Beltrán Cintrón et al. v. ELA et al.*, *supra*, pág. 104. Véase, además, *Báez Rodríguez et al. v. E.L.A.*, *supra*, pág. 241.

Sobre el particular, los prestigiosos tratadistas estadounidenses Hickman y Pierce han expresado que para dirimir si cierta agencia administrativa posee jurisdicción primaria exclusiva sobre determinado asunto debemos recurrir a su ley habilitadora. K. E. Hickman & R. J. Pierce, Jr., *Administrative Law Treatise*, 6ta ed., New York, Wolters Kluwer, 2019, Vol. II, pág. 1389 ("The question of whether an issue is within the agency´s primary jurisdiction is different from the question of whether the agency actually has exclusive statutory jurisdiction to resolve an issue.

**Determination of a question concerning the scope of an agency´s statutory jurisdiction requires detailed analysis of statutory provision and, in many cases, of the factual context in which the issue arises.**"). (Énfasis suplido).

Por último, es preciso señalar que la jurisdicción primaria exclusiva "no soslaya la revisión judicial, sino que la pospone hasta tanto el organismo administrativo emita su determinación final". *Beltrán Cintrón et al. v. ELA et al.*, *supra*, pág. 104. Véase, además, *SLG Semidey Vázquez v. ASIFAL*, 177 DPR 657, 677 (2009); *Rivera Ortiz v. Mun. de Guaynabo*, 141 DPR 257, 268 (1996). Asimismo, hemos sentenciado que los tribunales generales de justicia conservarán jurisdicción original ante un planteamiento de violación de derechos constitucionales. *Íd.*

### III.

Al realizar el análisis propuesto por los tratadistas Hickman y Pierce, -- el que ha sido recogido en previos dictámenes de este Tribunal --, e ir sobre la ley habilitadora que crea la Oficina del Comisionado de Seguros, precisa señalar que, en nuestra jurisdicción, ésta es la encargada de reglamentar todos los asuntos relacionados a la industria de seguros en Puerto Rico. *ECP Incorporated v. OCS*, 205 DPR 268, 275 (2020); *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 DPR 425, 442 (1997); *Comisionado de Seguros v. Bradley*, 98 DPR 21, 29 (1969). Lo anterior es de conformidad con las facultades que la Asamblea Legislativa le delegó a dicho ente gubernamental por virtud del Código de Seguros de Puerto Rico,

Ley Núm. 77 de 19 de junio de 1957, 26 LPRA sec. 101 *et seq.* (en adelante, "Código de Seguros"). *Nevárez Agosto v. United Surety et al.*, 2022 TSPR 57, 209 DPR ___ (2022); *ECP Incorporated v. OCS*, *supra*; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, *supra.*

En particular, el referido cuerpo de ley dispone que el Comisionado de Seguros de Puerto Rico (en adelante, "Comisionado de Seguros") es el llamado a fiscalizar y reglamentar el cumplimiento de las disposiciones de la ley que crea el mencionado ente gubernamental. Art. 2.030 del Código de Seguros, 26 LPRA sec. 235(2). Véase, además, *Nevárez Agosto v. United Surety et al.*, *supra*; *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 150 (2021). Asimismo, el Comisionado de Seguros está facultado para "adjudicar controversias sobre violaciones al Código [de Seguros] o su reglamento". Art. 2.030 del Código de Seguros, 26 LPRA sec. 235(14).

En esa línea, y ya más en lo relacionado al asunto que nos ocupa, el Comisionado de Seguros también es el encargado de adjudicar aquellas controversias que surjan al amparo de lo dispuesto en el Capítulo 30 del Código de Seguros, el cual recoge lo relacionado a la *Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud* (en adelante, "*Ley para el Pago Puntual de Reclamaciones*"), Ley Núm. 104-2002 (2002 [Parte 1] Leyes de Puerto Rico 417); Art. 30.010 del Código de Seguros, 26 LPRA sec. 3001. Eso es así, pues, la *Ley para el Pago Puntual de Reclamaciones*, *supra*, se promulgó con el propósito de regular la relación entre las

aseguradoras y los proveedores de servicios de salud. Exposición de Motivos de la Ley Núm. 104-2002, *supra*, págs. 417-418. En específico, mediante el referido estatuto, la Asamblea Legislativa procuró agilizar el pago de las reclamaciones a los proveedores de salud por parte de las aseguradoras. *Íd*. Ello, con el fin de incentivar a los profesionales de la salud y, a su vez, garantizar servicios de salud de calidad sin menoscabar los derechos contractuales y propietarios de éstos. *Íd*.

A esos efectos, y para instrumentar dicha intención legislativa, la *Ley para el Pago Puntual de Reclamaciones*, *supra*, estableció los términos dentro de los cuales una aseguradora u organización de servicios de salud debe satisfacer el pago de todas las reclamaciones -- procesables y no procesables -- presentadas por un proveedor de servicios de salud. Art. 30.030 del Código de Seguros, 26 LPRA sec. 3003. **Igualmente, y en lo que nos atañe, el aludido estatuto especificó que una aseguradora u organización de servicios de salud podrá solicitar el reembolso de una reclamación no procesable pagada a un proveedor, de conformidad con el procedimiento establecido por el Comisionado de Seguros.** Art. 30.040 del Código de Seguros, 26 LPRA sec. 3004.

Sobre esto último, debe mencionarse que el Art. 6 de la Regla 73 (Normas para Regular el Pago Puntual de Reclamaciones a los Proveedores de Servicios de Salud) del Reglamento del Código de Seguros de Puerto Rico Núm. 6559, Reglamento Núm. 8197 del Departamento de Estado de 11 de mayo de 2012,

establece que una aseguradora u organización de salud podrá solicitar el reembolso de cualquier reclamación pagada a un proveedor que, posteriormente, surja que no era procesable. Este requerimiento, de conformidad con el precitado estatuto, podrá hacerse dentro del término de seis (6) años desde la fecha en que la aseguradora u organización de salud efectuó el pago de referencia.[2]

**Dicho ello, es menester mencionar que el aludido cuerpo reglamentario -- entiéndase, el Reglamento del Código de Seguros de Puerto Rico, *supra* --, expresamente le confiere al Comisionado de Seguros la facultad y la autoridad en ley para examinar e investigar todas las controversias relacionadas al pago puntual de reclamaciones por servicios de cuidado de salud y facturación uniforme, incluidas aquellas relacionadas al reembolso.** Reglamento del Código de Seguros de Puerto Rico Núm. 6559, *supra*, Regla 73 (Normas para Regular el Pago Puntual de Reclamaciones a los Proveedores de Servicios de Salud), Art. 15. Específicamente, y según adelantamos, el

---

[2] Al respecto, el Art. 6 de la Regla 73 (Normas para Regular el Pago Puntual de Reclamaciones a los Proveedores de Servicios de Salud) del Reglamento del Código de Seguros de Puerto Rico Núm. 6559, *supra*, dispone que:

> **El Proveedor Participante que objete la solicitud de reembolso deberá agotar el procedimiento interno que haya establecido el Asegurador u Organización de Servicios de Salud antes de acudir ante la Oficina del Comisionado de Seguros para plantear la objeción mediante la solicitud de una investigación.** La parte adversamente afectada por la determinación del Comisionado [de Seguros] podrá recurrir al procedimiento adjudicativo a nivel administrativo. Luego, la parte adversamente afectada por el resultado de ese procedimiento administrativo puede recurrir al Tribunal de Apelaciones del Estado Libre Asociado de Puerto Rico en revisión judicial, si así lo desea. (Énfasis suplido).

Art. 30.080 del Código de Seguros, 26 LPRA sec. 3008, dispone lo siguiente:

> **El Comisionado [de Seguros] tendrá <u>jurisdicción original</u> respecto a las controversias que surjan entre proveedores participantes y aseguradoras u organizaciones de servicios de salud, al amparo de [este Código de Seguros].** La parte adversamente afectada por la determinación del Comisionado [de Seguros] podrá recurrir mediante revisión ante el Tribunal […] de Apelaciones del Estado Libre Asociado de Puerto Rico […]. (Énfasis suplido).

A tono con lo antes expuesto, el 19 de marzo de 2010 la Oficina del Comisionado de Seguros promulgó la Carta Normativa Núm. 2010-110-PP mediante la cual consignó las instancias en que ejercería su jurisdicción para atender aquellos asuntos relacionados al pago puntual de reclamaciones al amparo de un plan Medicare Advantage. Sobre el particular, el referido ente gubernamental dispuso que ostentará jurisdicción para hacer valer las disposiciones de la *Ley para el Pago Puntual de Reclamaciones*, *supra*, en los siguientes escenarios:

1. Cuando las partes en el contrato hayan pactado expresamente adoptar la Ley de Pago Puntual para regir los procedimientos de pago de reclamaciones;

2. Cuando el contrato no contenga una cláusula sobre el pago puntual de reclamaciones ("prompt payment provision") o cuando, a pesar de haberla [,] la cláusula no sea clara ni delimite con especificidad el término de tiempo en que el asegurador u organización de servicios de salud deberá pagar las reclamaciones de los proveedores.[3] Carta Normativa Núm. 2010-110-PP

---

[3] Sobre este particular, el Comisionado de Seguros en su Carta Normativa Núm. 2010-110-PP dispuso que:

> [d]ebido a que las partes están facultadas para fijar los términos de pago puntual a que bien hayan tenido negociar, es válido que en el contrato éstas estipulen adoptar los términos y disposiciones de la ley estatal, que en el caso de Puerto

de la Oficina del Comisionado de Seguros, 19 de marzo de 2010, pág. 4.

Establecido lo anterior, debemos recordar que, en el campo del derecho administrativo, la "ley habilitadora es el

---

Rico sería el Capítulo 30. En vista de que nuestra Oficina es la agencia gubernamental encargada de asegurar el cumplimiento de las disposiciones del Capítulo 30, cuando las partes acuerdan regirse por dicho Capítulo, o lo que es lo mismo, por la Ley de Pago Puntual, nuestra Oficina tiene jurisdicción para hacer cumplir lo pactado. Adviértase que en el escenario descrito, las partes voluntariamente optan porque la Ley de Pago Puntual les sea de aplicación.

Por otro lado, el Capítulo 30 también aplica cuando el contrato entre las partes no contiene una cláusula sobre pago puntual de reclamaciones o cuando, a pesar de haberla, la cláusula no es clara ni delimita con especificidad el término de tiempo en el que el asegurador u organización de servicios de salud deberá pagar las reclamaciones de los proveedores. Nótese que el propósito de exigir la inclusión de una cláusula sobre pago puntual en los contratos es, precisamente, que se establezcan términos para el pago de las reclamaciones de los proveedores, independientemente de cuáles éstos sean. Cuando dicho requisito se cumple, los términos establecidos contractualmente constituyen, en esa materia, "ley entre las partes". No obstante, si el requisito de establecer una cláusula sobre pago puntual se incumple, no existen parámetros que rijan el asunto dado que la reglamentación federal no establece el término en que deberán pagarse las reclamaciones presentadas por proveedores participantes. Por consiguiente, en estos casos la Ley de Pago Puntual de Puerto Rico aplicará de forma supletoria. Carta Normativa Núm. 2010-110-PP de la Oficina del Comisionado de Seguros, 19 de marzo de 2010, pág. 3.

Ello es cónsono con los pronunciamientos anteriores de la Oficina del Comisionado de Seguros recogidos en la Carta Normativa Núm. N-PP-3-73-2006 del 16 de marzo de 2006. En ésta, con relación a los contratos con cláusulas contrarias a la *Ley para el Pago Puntual de Reclamaciones*, *supra*, otorgados entre una aseguradora y un proveedor de servicios de salud, la mencionada dependencia gubernamental advirtió lo siguiente:

[…] las relaciones contractuales que se establezcan entre los proveedores de servicios de salud y los aseguradores y organizaciones de servicios de salud deben ser afines a las disposiciones de la Ley Núm. 104 y su claro propósito legislativo. Habida cuenta de que el principio de autonomía contractual entre las partes está subordinado a que los pactos, cláusulas y condiciones establecidas no sean contrarias a las leyes, la OCS, en quién recae el deber ministerial de administrar las disposiciones de la Ley Núm. 104, no avalará el que un asegurador autorizado a suscribir planes de cuidado de salud u organización de servicios de salud utilice sus contratos con los proveedores para establecer condiciones que tengan el efecto de evadir las obligaciones que impone la Ley. Carta Normativa Núm. N-PP-3-73-2006 de la Oficina del Comisionado de Seguros, 16 de marzo de 2006, pág. 6.

mecanismo legal mediante el cual se autoriza y se delega a la agencia [en cuestión] los poderes necesarios para que actúe conforme al propósito perseguido por el legislador al crearla". *ECP Incorporated v. OCS*, *supra,* pág. *277*, citando a *ASG v. Mun. San Juan*, 168 DPR 337, 343 (2006). En otras palabras, la ley habilitadora define y delimita la extensión de la jurisdicción del organismo administrativo. *DACo v. AFSCME*, 185 DPR 1, 13 (2012); *ASG v. Mun. San Juan*, *supra*; *Perfect Cleaning v. Cardiovascular*, 162 DPR 745, 758 (2004). Por tanto, una agencia administrativa está sujeta a los poderes y a las facultades que específicamente la Asamblea Legislativa le haya delegado por virtud de su ley habilitadora. *ECP Incorporated v. OCS*, *supra*; *OCS v. CODEPOLA*, 202 DPR 842, 852 (2019); *Ayala Hernández v. Consejo Titulares*, 190 DPR 547, 559 (2014).

Es, pues, a la luz de la normativa antes expuesta, que procedemos a disponer de la controversia ante nuestra consideración.

IV.

Como mencionamos anteriormente, en el presente caso, el doctor Fossas Blanco aduce que el Tribunal de Apelaciones erró al confirmar la determinación del foro primario que denegó su solicitud de desestimación por falta de jurisdicción sobre la materia. En específico, señala que el Tribunal de Primera Instancia carece de jurisdicción para dilucidar una controversia sobre el reembolso entre una

aseguradora y un proveedor de servicios de salud ya que dicha facultad le fue delegada expresamente a la Oficina del Comisionado de Seguros. Le asiste la razón.

Y es que, a la luz de la normativa antes expuesta, somos del criterio que es la Oficina del Comisionado de Seguros el foro con jurisdicción primaria exclusiva para entender en aquellos casos -- como el de epígrafe -- relacionados al reembolso de determinadas reclamaciones presuntamente no procesables pagadas a un proveedor de servicios de salud.[4] Este razonamiento es cónsono con el claro mandato legislativo que confirió a la referida dependencia gubernamental la jurisdicción original para resolver las controversias que surgieran entre una aseguradora y un proveedor de servicios de salud al amparo del Código de Seguros, *supra*, y, en específico, de la *Ley para el Pago Puntual de Reclamaciones*, *supra*.[5]

---

[4] Es menester señalar que la determinación que, en su día, emita el Comisionado de Seguros podrá ser revisada por el Tribunal de Apelaciones de conformidad con lo dispuesto en la Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 56. En lo pertinente, la precitada disposición reglamentaria dispone que el foro apelativo intermedio revisará "las decisiones, los reglamentos, las órdenes, las resoluciones y las providencias finales dictadas por organismos o agencias administrativas o por sus funcionarios(as), ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley". *Íd*.

[5] Valga señalar que, si bien reconocemos que la controversia ante nos surge en el contexto de una aseguradora adscrita a la Parte C del programa Medicare Advantage el cual fue promulgado al amparo del Título XVIII del Social Security Act, 42 USC sec. 1395 *et seq*., es claro que aquí nos encontramos ante una disputa entre una aseguradora y un proveedor de salud sujeto a las leyes estatales y a la jurisdicción de la Oficina del Comisionado de Seguros.

Es decir, contrario a lo resuelto recientemente por la Corte de Apelaciones de Estados Unidos para el Primer Circuito en *Medicaid and Medicare Advantage v. Emanuelli Hernández*, 2023 WL 234310, en el presente caso no estamos ante la alteración de estándares federales por parte de nuestra Asamblea Legislativa que fue el asunto que tuvo ante su consideración el aludido foro.

Así pues, procedía que el foro judicial se abstuviera de ejercer su jurisdicción y desestimara la acción en cobro de dinero instada por MCS Advantage. Lo anterior, debido a que como reseñamos, la Oficina del Comisionado de Seguros es el ente con el peritaje y el poder delegado para adjudicar controversias como la de autos.

Siendo ello así, es forzoso concluir que el foro apelativo intermedio erró al confirmar la determinación del Tribunal de Primera Instancia y, en consecuencia, al concluir que el foro primario ostentaba jurisdicción sobre la materia para entender en el presente asunto. Se cometieron los errores señalados.

V.

Por los fundamentos antes expuestos, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones. En consecuencia, se declara con lugar la *Moción para solicitar desestimación por falta de jurisdicción sobre la materia* presentada por el doctor Fossas Blanco, con el consabido efecto de desestimar la demanda instada por MCS Advantage por falta de jurisdicción.

---

**En esa dirección, y más similar a lo que aquí está en controversia, véase lo resuelto hace unas décadas atrás por la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico en *Med. Card Sys. v. Equipo Pro Convalecencia*, 587 F.Supp. 2d 384, 388-389 (2008). Allí, el tribunal hermano sentenció que: "the Medicare Act does not provide a procedure for resolving disputes between MA organizations and health care providers. […] Therefore, we find that Medicare Part C does not preempt contractual claims between MA organizations and health care providers. Accordingly, we have no subject matter jurisdiction over Plaintiffs´ claim."** (Énfasis suplido). *Íd.* Véase, además, *Professional Hospital Guaynabo, Inc. v. MSO of Puerto Rico, Inc.*, Civ. No. 20-1440 (PAD), 2021 WL 5142122 (Nov. 4, 2021); *Medicaid & Medicare Advantage Prod. Ass´n of Puerto Rico, Inc. v. Emanuelli-Hernández*, Civ. No. 19-1940 (SCC) (D.P.R. Mar. 1, 2021).

Se dictará Sentencia de conformidad.


Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

MCS Advantage, Inc.

    Recurrido

        v.                    CC-2021-0806     *Certiorari*

José L. Fossas Blanco y
otros

    Peticionarios

SENTENCIA

En San Juan, Puerto Rico, a 25 de enero de 2023.

Por los fundamentos expuestos en la *Opinión* que antecede, la cual se hace formar parte de la presente *Sentencia*, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones. En consecuencia, se declara con lugar la *Moción para solicitar desestimación por falta de jurisdicción sobre la materia* presentada por el doctor Fossas Blanco, con el consabido efecto de desestimar la demanda instada por MCS Advantage por falta de jurisdicción.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez disiente con opinión escrita.

Javier O. Sepúlveda Rodríguez
Secretario de Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

MCS Advantage, Inc.

    Recurrido

            v.                      CC-2021-0806

José L. Fossas Blanco y otros

    Peticionarios

La Jueza Presidenta Oronoz Rodríguez emitió una Opinión Disidente.

En San Juan, Puerto Rico, a 25 de enero de 2023.

Una mayoría de este Tribunal emprendió un rumbo errado en el análisis de este caso, haciendo completa abstracción de la **normativa federal aplicable** y de la **particularidad de la situación fáctica ante nos**. La Ley para el Pago Puntual, <u>infra</u>, ──en la cual se basa la Opinión mayoritaria para disponer de la controversia── no gobierna la relación entre las partes por dos razones puntuales: (1) la normativa federal desplaza el referido estatuto local y, (2) no estamos ante ninguna de las excepciones que autorizarían la aplicación de la legislación estatal. En vista de ello, **al ser inaplicable de entrada la Ley para el Pago Puntual**, <u>infra</u>, el resultado es que la Oficina del Comisionado de Seguros (OCS) está vedada de entender

en la disputa entre las partes. Así pues, es incorrecta la conclusión a la que arriba la mayoría a los fines de que la OCS tiene la "jurisdicción primaria exclusiva" para ventilar la controversia. Contrario al razonamiento elaborado en la Opinión del Tribunal, un examen detenido de la **normativa federal aplicable** al caso de autos y de los **hechos** ponen de manifiesto que el Tribunal de Primera Instancia (TPI) tiene plena facultad para dilucidar el pleito. Por ello, disiento respetuosamente.

I.

La Opinión del Tribunal incluye una sección de hechos. No obstante, estimo necesario incluir hechos adicionales que no se exponen en la Opinión.

Este es un caso de cobro de dinero **conforme a la legislación federal aplicable al programa Medicare**. En síntesis, MCS Advantage alega que entre los años 2010 al 2014, el doctor Fossas Blanco cobró indebidamente, utilizando códigos de especialista en oftalmología, sin serlo y sin estar contratado por MCS Advantage para proveer los servicios oftalmológicos especializados por los que cobró.

Según surge del expediente, MCS Advantage llevó a cabo unas auditorías que presuntamente revelaron que el doctor Fossas Blanco cobró, de forma indebida, la cantidad de $77,957.76. A raíz de ello, en el año **2015**, MCS Advantage inició gestiones de recobro por la vía extrajudicial. A pesar de las gestiones y diligencias realizadas, MCS Advantage no logró recobrar dichos fondos. Es meritorio señalar que el

doctor Fossas Blanco <u>no inició</u>, en aquel entonces, el proceso administrativo que provee la Ley Núm. 104-2002, conocida como la Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud (Ley para el Pago Puntual), 29 LPRA secc. 3001 y ss, la cual está incorporada en el Capítulo 30 del Código de Seguros. En vista de ello, el 10 de septiembre de 2018, MCS Advantage presentó una Demanda de cobro contra el doctor Fossas Blanco en el TPI.

Durante dos años las partes participaron de los trámites típicos de un litigio, incluyendo el descubrimiento de prueba, la contratación de peritos, la presentación del Informe sobre Conferencia con Antelación a Juicio y la celebración de la Conferencia con Antelación a Juicio, que se celebró el 26 de junio de 2019, entre otros. El juicio en su fondo estaba pautado para el 14 y 15 de julio de 2020. **Tres semanas antes del juicio**, el 25 de mayo de 2020 el doctor Fossas Blanco, por primera vez levantó el asunto jurisdiccional en una "Moción para Solicitar Desestimación por Falta de Jurisdicción sobre la Materia". En síntesis, alegó que el TPI carecía de jurisdicción para atender esta controversia y que la OCS era el organismo con jurisdicción original sobre la materia, por ser de aplicación la Ley para el Pago Puntual. El TPI declaró No Ha Lugar tanto la moción de desestimación, como la moción solicitando reconsideración.

Inconforme, el peticionario acudió al Tribunal de Apelaciones quien no encontró elemento alguno para intervenir con la determinación del foro recurrido por lo que confirmó

su dictamen. El Tribunal de Apelaciones entendió que no existía ningún estatuto o norma jurídica que privara al tribunal *a quo* de su jurisdicción para dilucidar una demanda sobre cobro de dinero en el contexto de un contrato de servicios médicos. Según razonó, para privar a un tribunal de su jurisdicción para atender algún asunto particular, es necesario que así se haya dispuesto expresamente en algún estatuto o que ello surja de este por implicación necesaria. Por ende, concluyó que en este caso no existe base legal alguna para determinar que el TPI no tenía jurisdicción, máxime cuando el propio foro administrativo que la parte peticionaria alegaba que tenía jurisdicción ——la OCS— se declaró sin jurisdicción.

El doctor Fossas Blanco acude ante nos para que revoquemos la determinación del Tribunal de Apelaciones. Entre otros, expone que los servicios provistos bajo los contratos con MSC Advantage no están cobijados por las leyes y regulaciones federales de Medicare y las guías e instrucciones de CMS. Dicho argumento sorprende, no solo porque el lenguaje de los contratos es claro e inequívoco, sino también porque así lo estipuló en el Informe sobre Conferencia con Antelación a Juicio dónde se plasmó que "en sus contratos con MCS Advantage, el Dr. Fossas se obligó a cumplir tanto con las políticas de MCS Advantage al igual que con la reglamentación que estableciese los *Centers for Medicaid and Medicare Services* (CMS)".

De igual manera, nos causan gran consternación los planteamientos del doctor Fossas Blanco a los efectos de que sus contratos se rigen bajo la Ley para el Pago Puntual, supra, pues esa aseveración no surge de ninguna parte de los contratos firmados entre las partes, sino que además son contrarios a su propia contestación **bajo juramento** al requerimiento #1 del Requerimiento de Admisiones, y en el cual admitió que la relación entre las partes se rige bajo los contratos suscritos y estipulados por las partes y la reglamentación de los CMS aplicable.

Por último, cabe destacar que, en mayo de 2020 cuando el doctor Fossas Blanco presentó la moción de desestimación ante el TPI, también presentó ante la OCS, una Solicitud de Intervención contra MCS Advantage sobre los hechos de este caso. **La OCS resolvió en aquel momento que carecía de jurisdicción para atender esta controversia.**[1]

II.

Con estos hechos presente, reiteramos que la médula de la controversia ante nuestra consideración es: si el TPI tiene jurisdicción para atender una reclamación de recobro que inicia un plan médico del programa Medicare Advantage ——que opera por la autorización de un estatuto federal—— contra un proveedor de servicios de salud. Como veremos, el planteamiento de MCS Advantage, en cuanto a que las leyes

---

[1] El doctor Fossas Blanco recurrió al Tribunal de Apelaciones en revisión judicial. Dicho recurso aparentemente nunca se notificó a MCS Advantage y actualmente MCS Advantage no es parte de ningún proceso administrativo relacionado a la solicitud del doctor Fossas Blanco.

federales ocupan el campo en asuntos de Medicare Advantage, incide en qué estatutos y disposiciones legales aplican a la controversia de autos. Es por esto que la Mayoría falló en su análisis y no ejecutó el ejercicio de interpretación necesario para llegar a una conclusión correcta en derecho al resolver la controversia. La controversia de este caso no se podía analizar al amparo de las disposiciones del Código de Seguros de Puerto Rico y su reglamentación porque el campo está claramente ocupado por la legislación federal.[2]

### A. Medicare Advantage

El Medicare and Medicaid Act se estableció en el 1965 como parte de la Ley Federal del Seguro Social (Social Security Act). En el 1997, se modificó el programa de Medicare para incluir la Parte C, también conocida como Medicare Advantage (MA). Este programa brinda a sus beneficiarios una gama más amplia de opciones de planes de salud a través de las cuales pueden obtener sus beneficios de salud. Bajo el programa MA, la agencia federal *Centers for Medicare and Medicaid Services* (CMS) contrata con organizaciones de mantenimiento de la salud y otras entidades privadas para brindar servicios de atención médica a aquellos inscritos en Medicare. En otras palabras, MA viabiliza que seguros privados puedan ofrecer los beneficios gubernamentales que ofrece Medicare.

Las organizaciones de MA pueden contratar a terceros para brindar servicios administrativos y de atención médica a los

---

[2] Según discutiremos más adelante, aún si alguien estimara que el campo no está ocupado, no se cumplen los elementos para decretar que la jurisdicción del ente administrativo es exclusiva.

afiliados. Los contratos entre las organizaciones de MA o sus delegados y los proveedores intermedios se negocian libremente, con pocos requisitos federales. Sin embargo, las reglamentaciones de MA exigen que los contratos entre CMS bajo organizaciones de MA contengan una disposición relacionada con el pago puntual de las reclamaciones.

Si bien la controversia específica del recurso ante nos no era si la legislación federal ocupa el campo sobre la Ley para el Pago Puntual en cuanto a entidades que forman parte del programa federal de Medicare Advantage, estimo que ese análisis era imprescindible para resolver la controversia jurisdiccional que se nos trajo.

**MCS Advantage es una entidad que forma parte del programa federal Medicare Advantage** por lo que, contrario a lo que intima el peticionario, no estamos ante una reclamación típica entre un plan médico "comercial" y un proveedor de servicios médicos. Se trata de una acción de cobro de dinero relacionada al recobro, conforme a la legislación federal aplicable, de un alegado cobro indebido entre una aseguradora y un proveedor que forman parte del programa federal de Medicare Advantage. Esta particularidad significa que, a diferencia del "caso típico" que intima el peticionario, para disponer de la controversia se requiere evaluar si la normativa federal sobre este extremo desplaza la regulación local.

B. Campo ocupado

La doctrina de campo ocupado origina de la Constitución

federal, en específico de la Cláusula de Supremacía, la cual expresa lo siguiente: "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; [...] shall be the Supreme Law of the Land". Art. VI, Const. EE.UU., LPRA, Tomo 1. De esta manera, se le otorgó al Congreso de los Estados Unidos la facultad de concederle jurisdicción exclusiva al Gobierno federal en ciertos asuntos, aunque con anterioridad estos hayan sido comúnmente percibidos como de índole estatal.

Esto puede surgir cuando así lo haya expresado el Congreso, cuando la clara intención de la ley sea privar de jurisdicción a los tribunales estatales, o cuando la reglamentación de un área específica sea tan abarcadora que no cabe duda de que la intención federal fue reglamentar la totalidad del área. Lilly del Caribe, Inc. v. Municipio Autonomo de Carolina, 2022 TSPR 101 (2022); Mun. de Peñuelas v. Ecosystems, Inc., 197 DPR 5, 14-15 (2016); Rodríguez v. Overseas Mil., 160 DPR 270, 282 (2003). El propósito de esta doctrina es regular aquellas áreas "en las cuales el interés o propósito federal es tan dominante que no debe existir reglamentación estatal" o en circunstancias en las que "[la reglamentación estatal en determinada área] podría producir un resultado incompatible con los objetivos [del gobierno federal]". Lilly del Caribe, Inc. v. Municipio Autónomo de Carolina, supra.

Según arguye MCS Advantage, las disposiciones del Código de Seguros de Puerto Rico —incluyendo las de la Ley

para el Pago Puntual—— no vinculan al programa Medicare Advantage en Puerto Rico debido a que la ley federal, expresa y explícitamente, limita la jurisdicción de los estados solamente a asuntos relacionados al licenciamiento y solvencia. Ello surge del Social Security Act, que dispone en la Sección 1856(b)(3) que:

> The standards established under this part **shall supersede any State law or regulation** (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part. 42 USC 1395W-26.

Con esta disposición el Congreso expresa y claramente estableció que los estándares consignados en esa ley, la cual aplica a las entidades sujetas al programa federal de Medicare Advantage, desplazan cualquier disposición estatal, excepto aquellas relacionadas a licenciamiento y solvencia. En otras palabras, la legislación federal ocupa el campo en lo pertinente al programa de Medicare Advantage y la legislación estatal podrá fijar asuntos de licenciamiento o solvencia únicamente.[3]

Tan reciente como el 18 de enero de 2023, la Corte de Apelaciones de Estados Unidos para el Primer Circuito

---

[3] Específicamente, entre los asuntos que regulan las disposiciones federales se encuentra lo referente al pago de reclamaciones por servicios que presta un proveedor de salud como parte de un contrato con un plan médico *advantage*. Los contratos entre el plan médico *advantage* y el proveedor de salud **tienen que** contener una cláusula sobre el pago puntual de reclamaciones. Véase: 42 CFR 422.520 (b) (1)(2). De esta forma, y según mandata el precepto citado, los pagos de las reclamaciones por servicios se realizarán estrictamente de conformidad con lo pactado. Íd. En ese supuesto, de haber un incumplimiento con los términos del contrato, definitivamente sería una disputa que pudiera atender el Tribunal de Primera Instancia y no la Oficina del Comisionado de Seguros. Con este cuadro, como muy bien dispone la ley federal, el rol de la Oficina del Comisionado de Seguros sería el de licenciar el plan médico *advantage* a nivel estatal y vigilar su solvencia, nada más.

interpretó (en un caso de Puerto Rico en el cual compareció el Comisionado de Seguros) que el *Medicare Prescription Drug, Improvement, and Modernization Act of 2003* (Medicare Advantage Act), Pub. L. No. 108-173, 117 Stat. 2066 (2003) (codificado en 42 U.S.C. §§ 1395w-21 to 1395w-28) ocupa el campo sobre cualquier regulación o ley estatal, excepto en casos de licenciamiento o solvencia. De igual forma, reiteradamente a nivel federal se ha interpretado específicamente que las disposiciones del Social Security Act, de donde surge la regulación de los programas de Medicare Advantage, así como las disposiciones aplicables del Federal Code of Regulations ocupan el campo en torno a los pagos puntuales ("prompt payment"). Véase por ejemplo, General Surgical Associates, P.A., v. Humana Health Plan of Texas, Inc., 2015 WL 1880276, donde en lo pertinente a este caso y en referencia al *Texas Prompt Pay Act* ──una ley similar a la Ley para el Pago Puntual en cuestión── se resolvió:

> The [Medicare Advantage] statute contains a preemption provision: "[t]he standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part." 42 U.S.C. § 1395w-26(b)(3) (2003). […]

> On its face, § 422.520 establishes a standard regarding prompt payments of claims. Subsection (a) requires contract provisions regarding prompt payment between CMS and MA organizations, and also places a prompt-payment requirement on those organizations; subsection (b) requires that contracts between MA organizations and providers like GSA also contain prompt-payment terms, and it obligates MA organizations to comply with those

terms. 42 C.F.R. § 422.420 (2005). **Because, under § 422.520, CMS has created standards in the area of prompt payment, laws like the TPPA are preempted, whether or not the law is "inconsistent" with those standards. […]**

**Because these payment standards were clearly established "with respect to MA plans which are offered by MA organizations under this part," they "supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency)." 42 U.S.C. § 1395w-26(b)(3). […] Because CMS "actually create[d] standards" for the prompt payment of claims, the TPPA is expressly preempted under § 1395w-26(b)(3).** See MEDICARE PRESCRIPTION Drug Benefit, 70 Fed. Reg. 4194-01, 4320. (Énfasis suplido).

Conforme a lo anterior, una Mayoría de este Tribunal erró al recurrir a la Ley para el Pago Puntual ——una ley estatal desplazada— para analizar una controversia relacionada a una organización de Medicare Advantage. Esa ley no le aplica a estas entidades y, por ende, no podía utilizarse como fundamento para contestar si el TPI está vedado de atender una reclamación de recobro de pago indebido como la de autos.

Precisamente porque las disposiciones y reglamentaciones federales ocupan el campo en asuntos de Medicare Advantage, en una Carta Normativa de 2010 el Comisionado de Seguros reconoció que <u>únicamente</u> podría ejercer su jurisdicción para hacer valer las disposiciones de la Ley para el Pago Puntual en reclamaciones relacionadas con un plan de Medicare Advantage en dos instancias: (1) cuando las partes expresamente pactaron en el contrato que se regirían por esa ley en cuanto a los procedimientos de pago de reclamaciones y (2) cuando el contrato no contenga una cláusula sobre el

pago puntual de reclamaciones, o a pesar de haberla, no es clara. Véase: Carta Normativa Núm. 2010-110-PP de la Oficina del Comisionado de Seguros.

Ninguna de estas instancias está presente en el caso de autos. Según surge del expediente y de los contratos entre las partes, **estas no pactaron adoptar la Ley para el Pago Puntual para regir los procedimientos de reclamaciones de Medicare Advantage en los contratos suscritos**. De hecho, las partes así lo estipularon en el Informe sobre Conferencia con Antelación a Juicio, y el doctor Fossas Blanco así también lo admitió en la Contestación a requerimiento de admisiones donde se plasmó que las partes adoptaban la reglamentación federal a los servicios provistos a beneficiaros de Medicare Advantage. Asimismo, y en cuanto a la segunda excepción de la referida Carta Normativa del 2010, **en cada contrato se estableció una cláusula sobre el pago puntual de las reclamaciones**.

En cambio, expresamente pactaron que la normativa que regularía su relación sería la legislación federal aplicable. Del contrato de 2013 surge que las partes acordaron lo siguiente:

> 5.8 *State Preemption*. PCP and MCS Advantage AGREE THAT Medicare laws, regulations, and standards for Medicare Advantage Organizations and PDP Sponsors supersede and preempt all state or Puerto Rico laws and regulations. **Nothing in this Agreement shall be intended or construed to incorporate, adopt, or in any way whatsoever apply to this Agreement the provisions of the Puerto Rico Prompt Payment of Claims to Health Services Providers Act,** Act no. 104 of July 19, 2002, as amended.

5.9 *Overpayments, Adjustments and Recoveries.* MCS Advantage shall have the right to make corrective adjustments regarding Overpayments. PCP shall promptly review all compensation and reimbursement received form MCS Advantage and shall notify MCS Advantage of any Overpayment and return said Overpayment to MCS Advantage within fifteen (15) days of receipt. MCS Advantage may offset any Overpayment against any future payment to PCP. MCS Advantage reserves the right to recover Overpayments to the PCP at the time the Overpayment is identified by PCP or MCS. **[Based on SSA1128J; PPACA 6402] MCS Advantage will make all Adjustments and Recoveries in accordance with all CMS rules, regulations, instructions and policies,** MCS Policies and Procedures, and the Provider Manual regarding billing and claim processing.

Igualmente, del contrato de 2009 surge que:

8.2 In particular, Provider **agrees to comply with all regulations related to the Medicare Advantage Program,** as established from time to time by the Centers for Medicaid and Medicare Services (CMS).

Recordemos que los contratos tienen fuerza de ley entre las partes y el principio de autonomía contractual permite que las partes contratantes establezcan los pactos, las cláusulas y las condiciones que entiendan convenientes.

De acuerdo con lo anterior, no se cumplen las instancias que —a modo de excepción— autorizarían la aplicación de la Ley para el Pago Puntual y que, en consecuencia, permitirían la intervención de la OCS. Ante ello, fue incorrecto concluir que la OCS tiene jurisdicción primaria exclusiva para atender una reclamación de cobro de dinero que instó una organización de naturaleza federal como Medicare Advantage por pago de lo indebido. Estimo que esto, sin más, nos mostraba el camino para disponer de la controversia de este caso.

Pese a lo anterior, aun si una mayoría de este Tribunal entendía que las regulaciones federales no ocupan el campo,

estimo que erraron al concluir que de la Ley para el Pago Puntual y el Reglamento Núm. 6559, *Normas para regular el pago puntual de reclamaciones a los proveedores de servicios de salud*, disponen que el Comisionado de Seguros tiene jurisdicción primaria exclusiva para dirimir controversias entre una aseguradora de Medicare Advantage y un proveedor de servicios de salud respecto al reembolso de determinadas reclamaciones pagadas en exceso.

En primer lugar, de la Ley para el Pago Puntual no surge expresamente ni por implicación necesaria que la OCS tiene jurisdicción primaria <u>exclusiva</u> sobre estos asuntos. Por el contrario, se limita a otorgar **jurisdicción original** y de ninguna manera se expresa que se refiere a jurisdicción primaria <u>exclusiva</u>.

Concluir lo contrario estaría en conflicto con el propósito por el cual la Asamblea Legislativa promulgó esta ley. La preocupación de la Asamblea Legislativa, como surge de la Exposición de Motivos, era que el pago tardío, incumplimientos contractuales, ofertas de pago por debajo de la cantidad reclamada y la falta de pago por insolvencia económica por parte de las Aseguradoras de planes de salud comercial estaban afectando adversamente la prestación de servicios de salud de calidad a la población puertorriqueña.[4] Por esto, la referida ley busca propiciar y reglamentar el pago oportuno por las Aseguradoras a los proveedores. A esos

---

[4] Nótese que en aquel entonces aún el gobierno federal no había legislado los beneficios de Medicare Advantage.

fines, establece en el artículo 30.070 que cualquier reclamación procesable que no sea pagada dentro del término dispuesto devengará intereses a favor del proveedor.

Nótese que la controversia de autos no versa sobre el tipo de controversia que esta ley pretende regular. Es decir, no estamos ante una Aseguradora que dejó de pagar y que el proveedor intenta cobrar lo que se le debe. Por el contrario, no está en disputa que MCS Advantage le pagó al doctor Fossas Blanco lo que reclamó por los servicios prestados dentro de los términos que establece el contrato que estos suscribieron. La disputa entre las partes es si el doctor Fossas Blanco cobró en exceso de lo debido.[5] Entonces, en consideración de que no estamos ante una controversia de la naturaleza que esta ley busca regular, no tiene sentido que esta limite los foros que MCS Advantage tiene a su disposición para resolver esta disputa.

Igual ocurre con el Reglamento Núm. 6559, en donde se establece que un proveedor que objete una solicitud de reembolso tendrá a su disposición el foro administrativo. Sin embargo, no surge del Reglamento expresamente ni por implicación necesaria que el Asegurador u Organización de Servicio de Salud que solicita el reembolso debe de hacerlo exclusivamente a través del Comisionado de Seguros ni que está impedido de solicitarlo ante el TPI.

---

[5] Cabe señalar además que los asuntos de las tarifas de Medicare Advantage tampoco caen bajo a jurisdicción de la OCS.

Resulta evidente, entonces, que ni la ley ni el Reglamento establecen de manera clara y precisa, ni de manera alguna, que el Comisionado de Seguros ostenta jurisdicción primaria exclusiva ni que el TPI está vedado de atender la controversia ante nos.

Esta interpretación es cónsona con cómo el mismo Comisionado de Seguros interpreta su propia jurisdicción. Por ejemplo, en la Carta Normativa Núm. N-PP-3-73-2006, el Comisionado concluye, a raíz del impago, por parte de un asegurador autorizado a suscribir planes de cuidado de salud u organización de servicios de salud, por motivo de que el proveedor no activó su reclamación en el término provisto por la Ley para el Pago Puntual, que el proveedor participante deberá recurrir mediante una acción civil de cobro por servicios prestado **ante el tribunal con jurisdicción**. Específicamente, la carta normativa dicta lo siguiente:

> "Basados en los artículos de la Ley y de la Regla antes citados, la OCS dispone que las únicas repercusiones que puede conllevar el que un proveedor participante presente una reclamación fuera de término de (90) días, que establece el Artículo 30.030, supra, o de aquel otro término mayor que haya acordado por libre contratación, son: 1) que el asegurador de planes de cuidado de salud u organización de servicios de salud no tendrá que regirse por los términos de pago puntual; 2) que no habrá imposición de intereses por pago tardío; y 3) **que la OCS no tendrá jurisdicción original sobre aquellas controversias que surjan**, por lo que, a raíz del impago por parte de un asegurador autorizado a suscribir planes de cuidado de salud u organizaciones de servicios de salud, **el proveedor participante deberá recurrir mediante una acción civil de cobro por los servicios prestados ante el tribunal con jurisdicción**". Carta Normativa Núm. N-PP-3-73-2006, pág. 4 (énfasis suplido).

Es decir, el propio Comisionado de Seguros reconoce que comparte su jurisdicción con el tribunal, lo cual necesariamente implica que no ostenta jurisdicción primaria exclusiva sino, a lo sumo, concurrente.

III.

Debemos recordar que en Puerto Rico los tribunales poseen jurisdicción general, lo que significa que "ostentan autoridad para atender cualquier causa de acción que presente una controversia propia para adjudicación, a menos que no tengan jurisdicción sobre la materia". Beltran Cintrón v. ELA, 204 DPR 89, 101 (2020) (citando a Rodríguez Rivera v. De León Otaño, 191 DPR 700, 708 (2014)). Además, esta capacidad solo puede ser limitada por el Estado, quien puede otorgar o privar a un tribunal de jurisdicción sobre la materia mediante legislación a esos efectos. Beltrán Cintrón v. ELA, supra; Rodríguez Rivera v. De León Otaño, supra. En otras palabras, "para privar a un 'tribunal de jurisdicción general' de su actividad para entender en algún asunto en particular, es necesario que así se haya dispuesto expresamente en algún estatuto o que ello surja del mismo por implicación necesaria". Rodríguez Rivera v. De León Otaño, supra.

De particular importancia a la controversia ante nos, tanto este Tribunal como la Corte Suprema Federal ha resuelto que, como regla general, los tribunales estatales tienen jurisdicción para atender todo asunto al amparo de las leyes estatales y **jurisdicción concurrente con los tribunales federales para atender asuntos que surjan bajo el palio de**

**las leyes federales.** SGL Semidey Vázquez v. ASIFAL, 177 DPR 657 (2009); Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820 (1990). Además, los tribunales estatales carecen de jurisdicción sobre algún asunto federal **únicamente cuando el Congreso de Estados Unidos expresamente dispone esa exclusividad jurisdiccional**, o cuando es palmaria la intención del Congreso de privar a los tribunales estatales de jurisdicción sobre dicho asunto federal. *Ib*.

Aplicando el derecho antes expuesto a los hechos de este caso, resulta claro que la única manera que el TPI podría perder jurisdicción sobre la materia con relación a controversias entre una aseguradora que es parte del programa federal de Medicare Advantage y un proveedor de servicios de salud sobre el reembolso de determinadas reclamaciones pagadas es mediante un acto por parte del Estado que **inequívocamente** le prive de la referida jurisdicción. Según vimos, no nos encontramos ante ese escenario. Por otro lado, el hecho de que la ley aplicable a la controversia de autos sea una ley federal, tampoco es un impedimento para que el TPI atienda el asunto.

Además, es importante resaltar que las partes pactaron expresamente ——en al menos, uno de los contratos—— que el foro con jurisdicción para atender cualquier controversia que surgiera entre ellos **sería exclusivamente el TPI.**[6] Recordemos que los contratos tienen fuerza de ley entre las partes y el

---

[6] 11.5 **Venue.** If any controversy may arise regarding the interpretation or performance of this contract, the parties agree that, in the event of any litigation, venue shall lie solely in the jurisdiction of the Superior Court of the Commonwealth of Puerto Rico. Apéndice, pág. 155.

principio de autonomía contractual permite que las partes contratantes establezcan los pactos, las cláusulas y las condiciones que entiendan convenientes.

IV.

En fin, la tesis de mi disenso es sencilla. La Opinión del Tribunal no consideró la prominente normativa federal que establece las pautas de la relación entre MCS Advantage y el doctor Fossas Blanco. Al ser ello así, erró en su conclusión de enviar a las partes a que ventilen su controversia a la OCS, un foro sin jurisdicción, según la propia agencia lo ha determinado.

Queda claro que, cuando se trata de un acuerdo entre una organización de salud de Medicare Advantage y un proveedor de salud, hay que recurrir obligatoriamente a la normativa federal. Esta establece, inequívocamente, y en lo pertinente, cómo habrán de atenderse las reclamaciones por servicios y, de surgir una controversia, definitivamente esta no se dilucida ante la OCS. Nuestros tribunales están facultados para entender en estas controversias, **pues no hay impedimento alguno para ello**. Asimismo, como reseñé, **solo en circunstancias sumamente particulares** la OCS tendría jurisdicción sobre controversias de reclamaciones por servicios entre una organización de salud Medicare Advantage y un proveedor de salud. Tales circunstancias no están presentes en este caso.

En virtud de lo expuesto, me veo imposibilitada de suscribir la Opinión mayoritaria. Estimo que se equivoca este

Tribunal al disponer de la controversia haciendo caso omiso a la letra clara de la legislación y de los reglamentos federales aplicables.

Maite D. Oronoz Rodríguez
Jueza Presidenta